PEOPLE v COTTON

PEOPLE v MERLINO

Docket Nos. 113824, 113825. Submitted April 16, 1991, at Detroit. Decided October 7, 1991, at 9:15 A.M. Leave to appeal denied, 439 Mich 926.

James T. Cotton, George P. Merlino, Jr., Brian M. Powell, David M. Venters, and Jeffrey S. Wood were charged in the Detroit Recorder's Court with assault with intent to rob while armed and with conspiracy to commit armed robbery. Merlino also was charged with possession of a firearm during the commission of a felony. The court, James A. Hathaway, J., entered two orders that quashed the information and dismissed all charges against the defendants, ruling that the 20th District Court, in the absence of proof of the corpus delicti of the offenses, abused its discretion in admitting the defendants' confessions and in binding them over for trial. The prosecutor appealed from each order, and the appeals were consolidated.

The Court of Appeals *held:*

1. The rule requiring that proof of the corpus delicti of an offense must precede the admission of evidence of a defendant's confession is satisfied where the prosecutor, without relying on the confession, presents direct or circumstantial evidence of an occurrence of the injury or loss specific to the offense and of criminal agency as the cause of the loss or injury. Upon presenting such evidence, the prosecutor may offer the confession as proof of the identity and intent of the perpetrator and as proof of any aggravating circumstances.

2. In this case, the corpus delicti of each of the crimes at issue was established sufficiently at the preliminary examinations to warrant the admission of the defendants' confessions. The Recorder's Court therefore erred in quashing the information.

3. Before the defendants' confessions were admitted, the corpus delicti of assault with intent to rob while armed was

REFERENCES

Am Jur 2d, Evidence §§ 1140-1142.

See the Index to Annotations under Confessions and Admissions; Corpus Delicti.

established with evidence that a forceful and violent assault upon the victim had been committed by armed persons and the corpus delicti of conspiracy was established with circumstantial evidence of an agreement between two or more persons to commit a criminal act. The district court did not abuse its discretion in admitting the confessions as proof of the defendants' identities and their intent.

Reversed and remanded.

CRIMINAL LAW — EVIDENCE — CONFESSIONS — CORPUS DELICTI.

The rule requiring that proof of the corpus delicti of an offense must precede the admission of evidence of a defendant's confession is satisfied where the prosecutor, without relying on the confession, presents direct or circumstantial evidence of an occurrence of the injury or loss specific to the offense and of criminal agency as the cause of the loss or injury; upon presenting such evidence, the prosecutor may offer the confession as proof of the identity and intent of the perpetrator and as proof of any aggravating circumstances.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of the Criminal Division, Research, Training, and Appeals, and *Thomas M. Chambers,* Assistant Prosecuting Attorney, for the people.

*Garber, Harris & Sherbow, P.C.* (by *Ira A. Harris*), for James T. Cotton.

*James A. Carlin,* for Brian M. Powell.

*Barry A. Resnick,* for David M. Venters.

*Neaton & Fenner, P.C.,* (by *Richard A. Neaton*), for Jeffrey S. Wood.

Before: MURPHY, P.J., and SHEPHERD and T. G. KAVANAGH,* JJ.

MURPHY, P.J. The people appeal as of right from

* Former Supreme Court justice, sitting on the Court of Appeals by assignment.

two orders entered by the Detroit Recorder's Court that granted defendants' motions to quash the information charging all the defendants with assault with intent to rob while armed, MCL 750.89; MSA 28.284, and conspiracy to commit armed robbery, MCL 750.157a(a); MSA 28.354(1)(a), and defendant Merlino, alone, with possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). The Recorder's Court held that there was insufficient evidence to support binding over defendants for trial on the former two charges because the prosecutor had failed to establish the corpus delicti of these crimes without the aid of defendants' confessions. The court concluded that the only possible crimes established by the evidence at the preliminary examination were malicious destruction of property and assault and battery, both committed by defendant Cotton. We reverse.

The sole issue on appeal is whether the district court erred in admitting defendants' confessions into evidence at the preliminary examination. The people argue that after the Supreme Court's decision in *People v Williams,* 422 Mich 381; 373 NW2d 567 (1985), the traditional corpus delicti rule now applies only to cases in which the use of a defendant's statement could lead to a conviction when no crime was actually committed. According to the people, once evidence is presented to establish the core of a crime, the defendant's confession may be used to elevate the crime by supplying additional elements or aggravating circumstances. The people contend that at the preliminary examinations in the present case, it presented evidence establishing that an assault and conspiracy had been committed and that defendants' confessions therefore properly could be used to elevate these

offenses to those charged in the information. We agree.

The charges against defendants arose out of an incident that occurred just after midnight on May 18, 1988, at the home of attorney Michael Blake at 23340 Bonair in Dearborn Heights. At about 12:30 A.M., Kevin Klatz was in the neighborhood to drop off his sister when he observed a black Buick Regal driven by a light-skinned man circling the area. Because the driver kept looking at Klatz as he dropped off his sister and the driver had been circling around for about ten minutes, Klatz decided to follow the car. Klatz wrote down the license plate number "322 LYS" and called the police when he arrived at his home about thirty minutes later. The police traced this number to the license plate for a black Buick Regal owned by defendant Powell.

In the meantime, Blake was home alone, lying in bed and watching a movie on cable television while waiting for his girl friend and her friend to arrive. Suddenly, the cable television went out, so Blake turned off the television and tried to sleep. Because of a prior attempted burglary at a neighbor's house, he had left on all the outside lights of his house.

Blake then heard a tremendous pounding on his front door. His dog ran down the stairs and attacked the front door. Blake grabbed his gun and went downstairs. He looked through a window and saw a man wearing a black leather jacket and jeans, later identified as defendant Cotton, who was jumping around and pounding on the front door. Blake could see a large chunk of ham and a large knife on the front porch. Blake saw the man reach for the door, which Blake had left unlocked so that his girl friend could get into the house. Blake then opened the door, pointed the gun at

the man's face and said: "Mother Fucker, I'm going to kill you if you move. Get on your hands and knees, put your hands behind your head, or I'm going to blow it off. I'm not fooling around with you, I had enough bullshit. Lay down." The man backed off, but did not lie down as Blake had ordered. He stood there shaking, with his eyes and mouth open.

Blake then noticed the man's eye movements, and out of the corner of his eye he could see other movement, so he fired his gun. Blake was hit at least once in the wrist with some object and was knocked to the ground. Infuriated, Blake fired a second shot. As he tried to close the door, someone on the other side was trying to break it down. Finally, Blake slammed the door shut and locked it. He ran upstairs, activated his alarm system, and grabbed his shotgun. From a window in the front of the house, Blake fired more shots. Blake saw only one person, but he knew there were at least two people present because he had been hit by a second person.

When the police arrived, Blake came back downstairs and saw blood, bone, and flesh on his front door and a trail of blood down the front walk. The police found a chunk of ham on the front porch, a machetelike knife on a ledge to the left of the front door, and a nine-millimeter semiautomatic weapon lying on the front lawn approximately ten to fifteen feet from the door. There were holes in the front lawn that appeared to have been caused by gunshots. Later, Blake discovered that the cable to his television had been cut, both at the telephone pole and at the point where it entered the house. Using a tracking dog, the police followed what appeared to be one set of footprints from the rear of Blake's house to a church parking lot less than two blocks away. In the parking lot, several

drops of blood, a handcuff key, a nickel, and two pennies were found on the ground.

At Garden City Hospital, where he was taken for treatment of his arm, Blake saw defendant Cotton sitting in the waiting room and identified him to two police officers who were present. Coincidentally, these officers had been sent to the hospital to investigate a reported gunshot wound received by a George Merlino. The officers also had been informed of the incident at Blake's house. They arrested Cotton on the basis of Blake's identification. They also arrested Merlino after he and Cotton gave inconsistent explanations of how Merlino had been wounded. However, both men indicated that they were together when the shooting occurred. When Merlino's clothing was seized as evidence, rounds of nine-millimeter ammunition were found in his jacket. Cotton's leather jacket also was seized.

Subsequently, all the defendants gave statements to the police. Defendant Cotton told the police that defendant Wood had contacted him and defendant Merlino about going to an attorney's house to "put [a] gun to his head and ask him for the phone, the battery pack, and the watch." Cotton said that one of Wood's friends (Venters) and an individual known as "Toothless" (Powell) met Cotton in a church parking lot. They cut wires both on a telephone pole and underground. A gun was supplied, and someone brought a knife, which Toothless threw onto the front porch. Cotton said that Toothless knocked the gun out of the man's hand as he came out the house. They all ran away toward the woods, leaving their gun on the front lawn. Merlino was wounded, and he and Cotton went to the hospital.

Defendant Wood told the police that he was contacted by defendant Venters about having "a

job done on a house of an attorney who had been talking too much." Wood said that he contacted Merlino and Cotton to assist and they met him and Venters during the day. The plan was to break into the house, take a portable telephone, battery pack, and watch, and to scare the attorney. Because too many people were around the house during the day, they decided to do the job at night. Wood said that he was grounded by his father and was unable to go along with the others that night.

Defendant Venters told the police that he had contacted Wood about the job and that Wood contacted Cotton and Merlino, whom Venters did not know. Venters contacted Powell when Wood could not go. These four met at 11:00 or 11:30 P.M. Defendant Powell's statement was generally consistent with those of the other defendants.

Defendant Merlino told the police that Venters supplied the semiautomatic weapon. He said that he had cut the two wires to the house, believing that they were telephone wires. He said that the ham was intended for Blake's dog. Merlino said he was stationed to the right side of the front door while Powell, who hit Blake in the arm with the gun, was stationed to the left. Merlino was shot and driven to the hospital, where they concocted a story for the police.

The statements of defendants Cotton, Powell, Venters, and Wood were admitted into evidence at their preliminary examination on June 1, 1988. Defendant Merlino's statement was admitted at his separate preliminary examination on August 10, 1988. The district court bound over all the defendants for trial on all the charges.

I

In order for a district court to bind over a

defendant for trial, there must be evidence amounting to probable cause to believe that a felony has been committed. *People v Hill,* 433 Mich 464, 469; 446 NW2d 140 (1989); MCL 766.13; MSA 28.931. Guilt beyond a reasonable doubt need not be established, but there must exist evidence of each element of the crime charged or evidence from which the elements may be inferred. *Hill, supra.* When the evidence conflicts or raises a reasonable doubt concerning guilt, the defendant should be bound over because there are questions for the trier of fact. *Id.* In reviewing a magistrate's decision to bind over a defendant for trial, the circuit court may not substitute its judgment for that of the magistrate, but may reverse only if it appears on the record that the magistrate committed an abuse of discretion. *People v Cowley,* 174 Mich App 76, 79; 435 NW2d 458 (1989).

Of the crimes charged in the information, only those of assault with intent to rob while armed and conspiracy to commit armed robbery are at issue. Thus, the determinative question in this case is what constitutes the corpus delicti of each of these crimes. In making this determination, we find it helpful to explore briefly the historical background of the corpus delicti rule.

The rule requiring proof of the corpus delicti independent of the accused person's confession, as it developed in the English common law, was limited to homicide cases. 7 Wigmore, Evidence (Chadbourn rev, 1978), § 2070, pp 508-510; *People v Allen,* 39 Mich App 483, 502; 197 NW2d 874 (1972) (Levin, P.J., dissenting), rev'd 390 Mich 383; 212 NW2d 21 (1973).

> The historic office of the corpus delicti rule in homicide cases is to guard against, indeed to preclude, conviction for a criminal homicide when

none was committed. Many of the early cases in which the rule, as applied to homicide cases, is discussed were prosecutions for killings occurring aboard ships upon the high seas. Frequently in such cases no body was found, for obvious reasons. As a result, the argument was advanced, and with occasional success, that no conviction should be obtained absent some evidence, independent of the defendant's confession that there was an unlawful killing, and the evidence must include proof of the existence of a corpse. However, early English courts resisted the adoption of such a rule, stating, in one case:

"By the 'corpus delicti,' subject of the crime, is not meant that the subject of the crime must be so extent, as to fall under the senses; but that the loss sustained is felt and known. As for example: in the crime of murder, though the body cannot be reached, yet the particular loss is known . . . ." [*Captain Green's Trial,* 14 How St Tr 1199, 1246 (Scot Adm, 1705).] [*Williams, supra,* 388-389.]

The corpus delicti rule appeared in two variations. Under one interpretation, the defendant's confession was admissible if any type of corroborative evidence was presented. The other, more commonly applied variation required that the evidence corroborative of the defendant's confession relate to the corpus delicti, that is, the fact of the injury. Wigmore, *supra,* p 510. In prosecutions for crimes other than homicide, English and Irish courts generally held that an accused's uncorroborated confession was sufficient to support a conviction. *Id.,* n 5.

In this country, although there is some authority for adopting the former interpretation, the latter, strict form of the rule was most commonly adopted to require corroborating evidence of the corpus delicti. *Id.,* § 2071, p 516. Moreover, application of the corpus delicti rule was extended to include crimes other than homicide. *Id.,* n 4.

In defining the concept of corpus delicti, Wigmore notes that an analysis of every crime reveals three components: (1) the occurrence of the specific injury or loss; (2) some person's criminality as the cause of the loss; and (3) the accused's identity as the perpetrator of the crime. In its strictest sense, the term "corpus delicti" refers only to the first of these elements. For example, the corpus delicti of homicide is the fact of death. However, most courts also have included the second element, someone's criminality. On the other hand, most courts have held that the accused's identity as the perpetrator of the crime is not an element of the corpus delicti. *Id.,* § 2072, pp 524-526. See also 3 Torcia, Wharton's Criminal Evidence (13th ed), § 691, pp 482-493, and 1 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 23, p 72. Thus, assuming that the corpus delicti is independently established, a confession or admission may be used to establish the identity of the perpetrator. Torcia, *supra,* 490-491.

II

In the past, our Supreme Court generally held that the corpus delicti of a crime could not be established solely by the extrajudicial admission or confession of the accused or an accomplice. *People v Barron,* 381 Mich 421, 424; 163 NW2d 219 (1968); *People v Kirby,* 223 Mich 440, 453; 194 NW 142 (1923); *People v Lane,* 49 Mich 340; 13 NW 622 (1882). Moreover, contrary to other jurisdictions, the Court interpreted the corpus delicti rule to require that the prosecution show evidence of every necessary element of the crime before a confession could be used. *People v Allen,* 390 Mich 383; 212 NW2d 21 (1973), rev'g 39 Mich App 483; 197 NW2d 874 (1972), and adopting the dissenting

opinion of Judge LEVIN, 39 Mich App 494. See also *Barron, supra,* 425-427, and Gillespie, *supra.* Thus, in *Allen* the Court held that, because the underlying felony is an essential element of a felony-murder charge, it also must be proven independently of the defendant's confession.

However, in *People v Williams,* 422 Mich 381; 373 NW2d 567 (1985), the Supreme Court considered the application of the corpus delicti rule to a first-degree, premeditated murder charge and held that the corpus delicti of that crime consists of two elements: the death of the victim and some criminal agency as the cause. *Id.,* 392. The Court explained:

> It is an inaccurate and unwarranted reading of the history and purpose of the corpus delicti rule that suggests the need for independent proof of each and every element of the particular grade and kind of common-law or statutory criminal homicide charged as a condition of admissibility of a defendant's confession. Such an understanding of the corpus delicti rule loses sight of the historic reason for the rule; [sic] to avoid conviction for a homicide that did not occur. The logic of the rule is not served by extending it to require proof, *aliunde* the defendant's confession, not only that a particular deceased lost his life and that the loss is a result of criminal agency but, in addition, proof of the aggravating circumstances which move the seriousness of the crime up the scale of criminal accountability (measured by the severity of the penalty) from manslaughter to second-degree murder or to first-degree murder. Whatever the aggravating circumstances which constitute a crime, second-degree murder instead of manslaughter, or first-degree murder instead of second-degree murder, the danger that a defendant would confess to a criminal killing which never occurred is adequately obviated when it is shown, other than by the accused's confession, that the deceased victim died as a result of a criminal agency. [*Id.,* 391.]

The Court concluded that once the prosecutor establishes second-degree murder by independent evidence, the defendant's confession may be used to establish the aggravating circumstances of premeditation and deliberation. *Id., 392.*[1]

Recently, in *People v Hughey,* 186 Mich App 585; 464 NW2d 914 (1990), this Court concluded that *Williams* had effectively overruled the *Allen* decision. This Court concluded that the reasoning behind *Williams* equally applies to felony-murder cases:

> That is, the purpose of the corpus delicti rule is also served in felony-murder cases if it is merely required that the prosecutor establish a death and that the death resulted because of some criminal agency, without requiring the additional showing of the remaining elements of felony murder, including the commission of the underlying felony. In both cases, by establishing that a death has resulted because of a criminal agency, the possibility of a defendant confessing to a nonexistent homicide is precluded.
>
> Moreover, the Court in *Williams* specifically stated that the corpus delicti rule does not require a showing of evidence in support of the determination of the particular degree of homicide committed, allowing, instead, for the degree of homicide to be established by the defendant's confession. *Id.* at 392. We see no reason, therefore, to distinguish between premeditated murder and felony murder by requiring the prosecutor to establish, independently of the defendant's confession, the aggravat-

---

[1] Although not expressly overruled by the Supreme Court in *Williams, Allen* was distinguished on the basis that it involved felony murder as opposed to premeditated murder. Moreover, the Court found it significant that *Allen* had preceded its decision in *People v Aaron,* 409 Mich 672; 299 NW2d 304 (1980), which rejected the traditional rule that even an accidental homicide occurring during the commission of a felony constituted felony murder and held that the killing must be a common-law murder to support a felony-murder conviction. *Williams, supra,* 388, n 3.

ing circumstance in felony murder—the underlying felony—which raised the homicide to first-degree murder, while in premeditated murder the prosecutor has no such burden of establishing, independently of the defendant's confession, the element of premeditation and deliberation. [*Hughey, supra,* 588-589.]

### III

Turning to the present case, we must decide whether the Supreme Court's decision in *Williams* altered the corpus delicti rule as it applies to crimes other than first-degree murder. After review of that opinion and of this Court's decision in *Hughey,* we conclude that the corpus delicti rule is satisfied in any criminal case if the prosecution shows that the specific injury or loss has occurred and that some person's criminality was the source or cause of the injury. A defendant's confession then may be used to elevate the crime to one of a higher degree or to establish aggravating circumstances.

Just as this Court saw no reason to distinguish between premeditated murder and felony murder in *Hughey,* we see no reason to distinguish between homicide and any other crime for purposes of the corpus delicti rule. As previously discussed, the historical purpose of the corpus delicti rule was to prevent a defendant from being convicted of murder solely on the basis of his confession when no death had occurred. As applied to other crimes then, the purpose of the rule is to prevent a defendant's confession from being used to convict him of a crime that never happened. In most prosecutions for crimes other than murder, the danger that a defendant's confession will result in conviction of a crime that did not occur is obviated

by the fact that the victim of the crime can testify about the circumstances that establish that the injury occurred as the result of some criminal agency. Thus, the dilemma that originally led to the development of the corpus delicti rule does not exist in many of these cases.

We note that, despite the Supreme Court's decision in *Williams,* in cases involving crimes other than murder, this Court has continued to state that the prosecution must establish the corpus delicti by presenting independent evidence of every element of the offense before a defendant's or a coconspirator's statement may be admitted. See *People v Swift,* 188 Mich App 619, 620; 470 NW2d 491 (1991); *People v Mumford,* 171 Mich App 514, 517; 430 NW2d 770 (1988); and *People v Gould,* 156 Mich App 413, 415; 402 NW2d 27 (1986). However, none of these decisions discusses or even mentions *Williams,* and all are distinguishable from the present case.

In *Gould,* the defendant was charged with obtaining unemployment benefits by submitting a false application to the Michigan Employment Security Commission. This Court held that the defendant's confessions were inadmissible because there was no evidence of the victim's detrimental reliance on the defendant's misrepresentations, and therefore, the prosecution had failed to independently establish the corpus delicti of the crime of obtaining property valued over $100 by false pretenses, MCL 750.218; MSA 28.415. However, we find no inconsistency between the holding in *Gould* and our holding in the present case because, even under the *Williams* definition of corpus delicti, evidence that the victim relied on the defendant's misrepresentations was necessary for a showing that the specific injury alleged had actually occurred. Because the testimony of the victim's

agent, an MESC worker, was insufficient to show detrimental reliance, there was no evidence that a crime had been committed, apart from the defendant's confessions. Therefore, even under our interpretation of the corpus delicti rule, the defendant's confessions were inadmissible.

The second case, *Swift,* is distinguishable because it addressed only the question whether venue is a necessary element of the corpus delicti of a crime and concluded that it was not. *Id., 620.* The panel did not address the issue whether intent or aggravating circumstances must be proved independently of the defendant's confession. Similarly, in *Mumford,* this Court concluded that all the essential elements of larceny in a building were shown independently of the defendant's confession. The issue presented in this case was not presented or addressed in that case.

IV

After review of the record, we conclude that the corpus delicti of each of the crimes at issue in this case was established sufficiently at the preliminary examinations to warrant the district court's admission of defendants' confessions.

The elements of assault with intent to rob while armed are: (1) an assault with force and violence; (2) an intent to rob or steal; and (3) the defendant's being armed. *People v Federico,* 146 Mich App 776, 790; 381 NW2d 819 (1985). Because this is a specific-intent crime, there must be evidence that the defendant intended to rob or steal. *Id.*

At defendants' preliminary examinations, the victim testified that he was assaulted by at least two individuals and that his arm was hit with some object with sufficient force to injure his arm and knock him to the ground. A machetelike knife

and a nine-millimeter semiautomatic weapon were left behind by the perpetrators of the assault. Wires leading from a telephone pole to the house were cut. The victim believed that he had shot one of his attackers, and evidence to that effect was found at the scene. The victim was able to identify defendant Cotton at the hospital shortly after the incident. Cotton was there waiting for Merlino, who had been shot. Cotton and Merlino both stated that they were together when Merlino was shot.

We conclude that this evidence was sufficient to independently establish that a crime was committed; specifically, that the victim was assaulted with force or violence by one or more persons and that his attackers were armed. That the assault was the result of some criminal agency may be inferred from the cut wires, the dangerous weapons, and the fact that at least one of the attackers had concealed himself from the victim's view while defendant Cotton distracted him. Therefore, we conclude that the district court correctly concluded that the corpus delicti of the assault charge had been independently established and that it properly admitted defendants' extrajudicial statements to establish their identities as the perpetrators of the assault and their intent to rob or steal.

We further conclude that there was sufficient independent evidence regarding the second charge, conspiracy to commit armed robbery, to render defendants' confessions admissible. A conspiracy is mutual agreement or understanding, express or implied, between two or more persons to commit a criminal act or to accomplish a legal act by unlawful means. *People v Carter,* 415 Mich 558, 567; 330 NW2d 314 (1982). Being a specific-intent crime, conspiracy requires both the intent to combine with others and the intent to accomplish the ille-

gal objective. *Id.,* 568. The essence of a conspiracy is the agreement itself. Nevertheless, direct proof of agreement is not required, nor is proof of a formal agreement necessary. It is sufficient that the circumstances, acts, and conduct of the parties establish an agreement. *People v Atley,* 392 Mich 298, 311; 220 NW2d 465 (1974). A conspiracy may be proven by circumstantial evidence or may be based on inference. *People v Sutherlin,* 116 Mich App 494, 498; 323 NW2d 456 (1982); *People v Taurianen,* 102 Mich App 17, 31; 300 NW2d 720 (1980). See also *People v Harding,* 163 Mich App 298, 322; 413 NW2d 777 (1987), vacated and remanded on other grounds, 430 Mich 859 (1988). The crime of conspiracy is complete upon formation of the agreement. No overt act in furtherance of the conspiracy is necessary. *People v Juarez,* 158 Mich App 66, 73; 404 NW2d 222 (1987). Moreover, withdrawal from the conspiracy is ineffective because the heart of the offense is the participation in the unlawful agreement. *Id.*

The existence of a conspiracy in this case was established by circumstantial evidence that led to an inference that defendants had agreed among themselves to accomplish an illegal act. The testimony of the victim established that there were at least two persons present when he was assaulted. The victim was able to identify defendant Cotton as one of his attackers. Other testimony placed both defendants Powell and Merlino in the vicinity of the victim's home shortly before or after the time of the assault. Moreover, the manner in which the assault was accomplished, i.e., the cutting of the wires, the possession of dangerous weapons, and the distracting of the victim by defendant Cotton while another individual concealed himself and attacked from the side, shows a plan and concert of action that leads to inferences

of both the existence of a conspiracy and an intent to accomplish an illegal objective. Therefore, we conclude that defendants' confessions were admissible as further evidence of the identity and intent of the conspirators.

In summary, we hold that the corpus delicti rule is satisfied and a defendant's confession may be admitted into evidence when the prosecutor presents direct or circumstantial evidence, independent of the confession, establishing (1) the occurrence of the specific injury and (2) some criminal agency as the source of the injury. Once this showing is made, a defendant's confession may be used to establish identity, intent, or aggravating circumstances. In this case, there was sufficient independent evidence to establish the occurrence of both an assault and a conspiracy as a result of some criminal agency. Therefore, the district court properly admitted defendants' confessions into evidence at the preliminary examinations. We conclude that the district court's decision to bind over defendants for trial in the Recorder's Court was not an abuse of discretion and that the Recorder's Court erred when it granted defendants' motions to quash the information.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.