*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
May 9, 2019

Plaintiff-Appellee,

v

No. 342590
Monroe Circuit Court
LC No. 17-243643-FC

SKYLER REID PENDLETON,

Defendant-Appellant.

Before: MURRAY, C.J., and JANSEN and RIORDAN, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of unarmed robbery, MCL 750.530, and conspiracy to commit unarmed robbery, MCL 750.530; MCL 750.157a. Defendant was sentenced, as a second-offense habitual offender, MCL 769.10, to 84 to 270 months' imprisonment for his unarmed robbery and conspiracy to commit unarmed robbery convictions. We affirm.

## I. RELEVANT FACTUAL BACKGROUND

This case arises out of the robbery of Jonathan Pennington in the late hours of March 9, 2017. Defendant met Pennington while they were both incarcerated in county jail.[1] After their respective releases, Pennington, who held a medical marijuana card, began selling marijuana to defendant. On March 9, 2017, defendant contacted Pennington via Facebook and asked to purchase marijuana from Pennington. Pennington agreed to sell marijuana to defendant, and defendant requested that Pennington meet him at 1206 Vineyard Drive in Monroe Township, Michigan between 11:00 p.m. and midnight to complete the transaction.

---

[1] It is unclear from the record which county jail defendant and Pennington were housed in at the time of their meeting.

Defendant and his friend, Derrius Javonte Thornton, were driven by Amanda Grider in Grider's truck to meet with Pennington. When Pennington arrived, defendant got into the passenger seat of his car and unlocked the doors for Thornton to get into the rear passenger seat. Pennington got out of his car to pull an ounce of marijuana from the trunk, then got back into the driver's seat and showed defendant and Thornton the marijuana. As Pennington pulled a digital scale from the center console, Thornton held a revolver to his head and told Pennington that he and defendant were taking the marijuana. Defendant grabbed the marijuana from Pennington's hands, and also attempted to take $2,000 cash from Pennington's pockets. As defendant reached into Pennington's pockets, Pennington attempted to push defendant away. Thornton then hit Pennington in the head with the revolver while defendant punched Pennington in the side. Pennington put his car into reverse and attempted to speed away, but lost control and hit a nearby house. Defendant and Thornton got out of Pennington's car, got into Grider's truck, and drove away.

Defendant was convicted of unarmed robbery and conspiracy to commit unarmed robbery. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

First, defendant argues there was insufficient evidence presented to support his conspiracy to commit unarmed robbery conviction. Specifically, defendant claims there was insufficient evidence to demonstrate that he intended to enter into an agreement with Thornton to rob Pennington. We disagree.

This Court reviews challenges to the sufficiency of the evidence de novo. *People v Miller*, ___ Mich App ___, ___; ___ NW2d ___ (2019) (Docket No. 338453); slip op at 8. "We review the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could find that the prosecution proved the crime's elements beyond a reasonable doubt. Conflicting evidence and disputed facts are to be resolved by the trier of fact." *Id*.; slip op at 8 (citations omitted). "Circumstantial evidence, and reasonable inferences arising from the evidence, may constitute satisfactory proof of the elements of the offense. This Court should not interfere with the jury's role of determining the weight of the evidence or the credibility of witnesses." *People v Muhammad*, ___ Mich App ___, ___; ___ NW2d ___ (2018) (Docket No. 338300); slip op at 9 (quotation marks, brackets, and citations omitted). We resolve any evidentiary conflicts in favor of the prosecution. *People v Henderson*, 306 Mich App 1, 9; 854 NW2d 234 (2014).

Defendant was convicted of conspiracy to commit unarmed robbery. MCL 750.157a provides that "[a]ny person who conspires together with 1 or more persons to commit an offense prohibited by law, or to commit a legal act in an illegal manner is guilty of the crime of conspiracy." This Court has defined conspiracy as "[a] mutual agreement or understanding, express or implied, between two or more persons to commit a criminal act or to accomplish a legal act by unlawful means." *People v Cotton*, 191 Mich App 377, 392; 478 NW2d 681 (1991). In essence, "[t]he gist of a conspiracy is the unlawful agreement." *People v Mass*, 464 Mich 615, 632; 628 NW2d 540 (2001). Conspiracy requires proof of the defendant's specific intent to conspire with others, as well as the defendant's intent to accomplish an illegal objective. *Id*. at 629. "The intent, including knowledge of the intent, must be shared by the individuals." *People*

*v Jackson*, 292 Mich App 583, 588; 808 NW2d 541 (2011). However, a coconspirator need not "know the full scope of the conspiracy or participate in carrying out each detail, or that he was acquainted with each of his coconspirators or knew the exact part played by each of them." *People v Grant*, 455 Mich 221, 236, n 20; 565 NW2d 389 (1997). The crime of conspiracy is complete once the agreement is formed. *Jackson*, 292 Mich App at 587.

The elements of unarmed robbery are found in MCL 750.530, which provides:

> (1) A person who, in the course of committing a larceny of any money or other property that may be the subject of larceny, uses force or violence against any person who is present, or who assaults or puts the person in fear, is guilty of a felony punishable by imprisonment for not more than 15 years.

MCL 750.530(2) defines "in the course of committing a larceny" as including "acts that occur in an attempt to commit the larceny, or during commission of the larceny, or in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the property." Accordingly, to prove that defendant conspired to commit unarmed robbery, the prosecution must proffer sufficient evidence to show that defendant knowingly entered into an agreement with Thornton to use force or violence against Pennington, in the course of committing a larceny.

We conclude that the prosecution here presented sufficient evidence from which a rational jury could find beyond a reasonable doubt that defendant participated in a conspiracy to commit unarmed robbery. On March 9, 2017, defendant contacted Pennington—defendant's marijuana dealer for approximately one year—to ask if he and Thornton could buy marijuana. When Pennington agreed, defendant dictated the meeting location—a neighborhood that lacked street lights at the time due to a power outage. On the way to meet Pennington, defendant and Thornton stopped at another friend's house so that Thornton could get a gun. Defendant also knew that Thornton intended to steal the marijuana from Pennington because Thornton told him that he did not have money to buy marijuana from Pennington.

When defendant and Thornton got into Pennington's car, defendant knew to wait for Pennington to retrieve the marijuana from the trunk before taking any action. Once Pennington showed defendant and Thornton the marijuana, Thornton held a gun to Pennington's head as defendant grabbed the marijuana. Though defendant denied that he ever intentionally hit Pennington, Pennington testified that defendant repeatedly punched him when he tried to prevent defendant from taking the money in his pockets. Defendant also admitted that Thornton struck Pennington in the head with the gun multiple times. As a result of Pennington's interaction with defendant and Thornton, Pennington was bruised and bleeding from multiple lacerations in his head. Although there was no direct evidence of defendant's express agreement with Thornton to rob Pennington, "[d]irect proof of a conspiracy is not required; rather, proof may be derived from the circumstances, acts, and conduct of the parties." *Jackson*, 292 Mich App at 588 (quotation marks and citation omitted). Therefore, the prosecution presented sufficient evidence from which the jury could reasonably conclude that defendant intended to conspire with Thornton to use force or violence against Pennington in order to rob Pennington of money and marijuana.

## III. SENTENCING

Second, defendant argues that his sentences are unreasonable and disproportionate. We disagree.

This Court reviews "the reasonableness of a sentence for an abuse of the trial court's discretion." *People v Walden*, 319 Mich App 344, 351; 901 NW2d 142 (2017). Additionally, "this Court is required to review for reasonableness only those sentences that depart from the range recommended by the statutory guidelines." *People v Anderson*, 322 Mich App 622, 636; 912 NW2d 607 (2018). Likewise, a proportionality challenge to a sentence that falls within the properly scored guidelines range "is presumptively proportionate and must be affirmed." *People v Jackson*, 320 Mich App 514, 527; 907 NW2d 865 (2017). Moreover, MCL 769.34(10), the statute governing appeal of sentences, provides:

> If a minimum sentence is within the appropriate guidelines sentence range, the court of appeals shall affirm that sentence and shall not remand for resentencing absent an error in scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's sentence. A party shall not raise on appeal an issue challenging the scoring of the sentencing guidelines or challenging the accuracy of information relied upon in determining a sentence that is within the appropriate guidelines sentence range unless the party has raised the issue at sentencing, in a proper motion for resentencing, or in a proper motion to remand filed in the court of appeals.

"When a trial court does not depart from the recommended minimum sentencing range, the minimum sentence must be affirmed unless there was an error in scoring or the trial court relied on inaccurate information." *People v Schrauben*, 314 Mich App 181, 196; 886 NW2d 173 (2016). See also *People v Odom*, ___ Mich App ___, ___; ___ NW2d ___ (2019) (Docket No. 339027); slip op at 9, where this Court concluded that "a sentence within the Legislature's guidelines range is presumptively proportionate." To overcome this presumption, defendant must show that there were unusual circumstances that made the sentence disproportionate. *People v McFarlane, Jr*, ___ Mich App ___, ___; ___ NW2d ___ (2018) (Docket No. 336187); slip op at 14.

Here, defendant's minimum sentence of 84 months' imprisonment is within the recommended guidelines range of 43 to 107 months. Therefore, defendant's sentence must be affirmed. Further, defendant has not raised any errors in the scoring of the sentencing guidelines, and he does not argue that the trial court relied upon inaccurate information when scoring the guidelines. Accordingly, we conclude that because defendant's sentences fall within the properly calculated guidelines range, he cannot challenge their reasonableness or proportionality.

## IV. RESTITUTION

Finally, defendant argues that there was insufficient evidence to support the trial court's order that he pay Pennington $981.60 in restitution. Again, we disagree.

To preserve a challenge to the trial court's order that defendant pay a crime victim restitution, a defendant must object to the restitution order at sentencing. *People v Foster*, 319 Mich App 365, 371; 901 NW2d 127 (2017). Defendant failed to preserve his restitution challenge for appellate review because he did not object at sentencing to the trial court's order that he pay Pennington $981.60.

This Court reviews an unpreserved error for plain error affecting a defendant's substantial rights. *Foster*, 319 Mich App at 371, citing *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). To avoid forfeiture under the plain-error rule, a defendant must meet three requirements: "1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Carines*, 460 Mich at 763 (citation omitted). The third element generally requires the defendant to demonstrate "prejudice, i.e., that the error affected the outcome of the lower court proceeding." *Id*. Even if the defendant can show all three elements, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. This Court reviews de novo a "question of restitution [that] involves a matter of statutory interpretation . . . ." *In re McEvoy*, 267 Mich App 55, 59; 704 NW2d 78 (2005).

Crime victims have both a constitutional and statutory right to restitution. Const 1963, art 1, § 24; MCL 780.766 *et seq; People v Wahmhoff*, 319 Mich App 264, 269; 900 NW2d 364 (2017). The purpose of restitution is to enable crime victims to recoup losses suffered as a result of a defendant's criminal conduct. *Newton*, 257 Mich App at 68. Under the Crime Victim's Rights Act (the CVRA), a victim is "an individual who suffers direct or threatened physical, financial, or emotional harm as a result of the commission of a crime." MCL 780.766(1); *People v Fawaz*, 299 Mich App 55, 65; 829 NW2d 259 (2012). Pennington constitutes a victim under the CVRA for the purposes of restitution because he suffered financial harm—Pennington paid to have his car towed and paid to have his car repaired—as a result of defendant's criminal conduct.

Restitution may only encompass "those losses that are 'easily ascertained and are a direct result of a defendant's criminal conduct.' " *People v Corbin*, 312 Mich App 352, 362; 880 NW2d 2 (2015), quoting *People v Gubachy*, 272 Mich App 706, 708; 728 NW2d 891 (2006). There must be "a direct, causal relationship between the conduct underlying the convicted offense and the amount of restitution to be awarded." MCL 780.766(2); *People v McKinley*, 496 Mich 410, 421; 852 NW2d 770 (2014). "The amount of restitution . . . must be based on the actual loss suffered by the victim . . . ." *People v Bell*, 276 Mich App 342, 347; 741 NW2d 57 (2007).

Defendant contends that there was no verification or documentation to support the trial court's order that defendant pay Pennington $981.60. However, defendant's Presentence Investigation Report (PSIR) states:

Mr. Pennington stated his car did suffer mechanical damage that did require repair and that he had to pay the tow company to get his car out of the tow yard. Mr. Pennington reported, as his father is a mechanic[,] he was able to get his car fixed quickly through his father's repair shop. This writer requested Mr. Pennington

find the receipts and contact this writer to provide an exact figure he would be requesting for restitution. On . . . [November 29, 2017,] this writer received receipts for the tow and repair of the damage to Mr. Pennington's vehicle. The receipts list the total cost to be $981.60.

Pennington testified that his car was towed because the key had broken off in the ignition. Pennington provided the author of defendant's PSIR with receipts for the cost of towing his car and the cost of repairs to his car. Accordingly, the amount of restitution was based on the actual financial loss suffered by Pennington, which was a direct result of the conduct underlying defendant's convictions. See MCL 780.766(2). Therefore, defendant has failed to demonstrate that the trial court committed any error.

Affirmed.

/s/ Christopher M. Murray
/s/ Kathleen Jansen
/s/ Michael J. Riordan