*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DAVID CHRISTOPHER IMPENS,

Defendant-Appellant.

UNPUBLISHED
December 14, 2023

No. 363737
Kent Circuit Court
LC No. 19-011444-FH

Before: FEENEY, P.J., and RICK and HOOD, JJ.

PER CURIAM.

Defendant, David Christopher Impens, appeals by right his convictions of third-degree criminal sexual conduct (CSC-III) (incapacitated victim), MCL 750.520d(1)(c); and fourth-degree criminal sexual conduct (CSC-IV) (incapacitated victim), MCL 750.520e(1)(c). The trial court sentenced defendant to serve 3 to 15 years' incarceration for his conviction of CSC-III and one to two years' incarceration for his conviction of CSC-IV. On appeal, defendant argues that this Court should vacate defendant's convictions and remand with instructions that defendant's confession must be suppressed on the basis of the *corpus delicti* rule. For reasons stated herein, we affirm defendant's convictions.

## I. RELEVANT FACTS AND PROCEEDINGS

This case arises out of a sexual assault that occurred after a group of friends went out drinking, after which the victim returned to defendant's home. The victim was interviewed and provided a description of the events that transpired before and after the incident; however, the victim had no recollection of being sexually assaulted. Subsequently, defendant was interviewed by the investigating detective and confessed to both sexual touching and digital penetration of the victim. Defendant was then charged with CSC-III. Before trial, defendant requested the trial court to rule on the admissibility of defendant's confession. Defendant asserted that the *corpus delicti* rule prohibited the admission of his confession, arguing that there was insufficient evidence to show that a criminal act occurred.

The trial court held an evidentiary hearing at which the victim testified. The victim testified that she went out for drinks with a group of friends, including defendant. The victim explained

that they had all been drinking and that she first got sick at one of the bars and then was getting sick at defendant's home, where defendant and another friend of the group resided. The victim explained that defendant brought her water and told her that she could not drive home and that she could stay in his bedroom. Defendant told her that he would not sleep in the room with her after she expressed hesitation. Defendant then walked the victim to his bedroom, and she laid on top of the bed, over the covers, with all of her clothes on. The victim testified that she was wearing jeans, undergarments, a tank top, a long-sleeved shirt, and socks. She remembered that defendant was in the doorway and that he said goodnight, and she then "passed out."

The victim explained that at three or four o'clock in the morning, she "woke up shaking and freezing" and that she looked down and discovered that her shirts and bra were pulled up over her chest and that she did not have any undergarments or pants on. She looked beside her, confused, and saw defendant sleeping in bed next to her. The victim "ran out of the room," pulling her long tank top over her body and asked defendant's roommate and mutual friend of the victim and defendant to retrieve her clothes for her from defendant's room. She explained to him that she did not know what happened and that she woke up like this. He retrieved her clothes, she quickly changed, and she left the residence. The victim drove home, and defendant later texted her asking, "[W]hat's going on why did you leave?"; she replied, "[W]hy did I wake up with no clothes on, this is not okay?" Defendant replied, "[W]hat are you talking about?"

The victim testified that she went home and took a shower because she had vomit in her hair from getting sick the night before and cried until she fell asleep. She remained in bed all day. The victim's mother continued to ask her if she was okay, but the victim would not say anything. The victim then did not go to work on the following Monday and went to Planned Parenthood to get a birth control pill. She then obtained sexually transmitted disease testing from her primary care doctor and was positive for Trichomoniasis, which she was negative for before this incident. The victim testified that her "bottom" hurt "really bad" and that it was "really sore," "like somebody had done something to it." The victim explained that she had stayed over at defendant's in the past and slept on the sofa in the living room after a night drinking with the same group of friends. The victim also explained that she thought defendant tried to kiss her at the bar but that she pulled away and that they had never had that type of relationship because they were just friends.

The victim was somewhat inconsistent regarding her memory of whether she took her coat and shoes off before she went to bed and explained that she did not "remember little details," stating: "I know I had clothes on and that, like my arms were covered, my legs were covered when I went to bed. I know I was wearing my tank-top, I know I was wearing my shirt, but I don't remember if my coat was on or off or my shoes were on or off," and "[b]ut I know my pants where [sic] on, my underwear was on, my bra and my two shirts." The victim testified that she did not have any memory of being sexually touched or penetrated by defendant.

During an interview with police, defendant confessed that he kissed and touched the victim's breasts and nipples for two to five minutes, and that he digitally penetrated her vagina with two fingers for 15 to 20 minutes. Subsequently, the trial court denied defendant's motion to suppress his confession. The trial court's explanation repeatedly emphasized the victim's testimony regarding her memories of defendant telling her that he would sleep elsewhere and how the victim remembered going to bed fully dressed. The trial court indicated that the victim's state of undress and panic following her discovery that she was undressed was sufficient evidence that

some sort of sexual assault occurred. The trial court also referred to the victim's testimony regarding the pain that she felt the morning after the incident and how the victim said that it could have been related to her irritable bowel syndrome (IBS) but that it felt different.

A trial was held at which the victim presented testimony consistent with her testimony at the evidentiary hearing. Additionally, various other witnesses testified, including a friend who was with defendant and the victim on the night of the incident, defendant's roommate, the police officer who initially interviewed the victim, and the detective who was assigned to investigate the case. Most pertinent was the roommate's testimony that the victim woke him up in the early morning hours, confused and undressed, asking him to retrieve her clothes from defendant's room. Additionally, both the initial officer and the investigating detective provided testimony regarding the victim's initial report of the incident. Further, the investigating detective provided the foundation for the admission of defendant's recorded interview during which defendant admitted to sexual touching and digital penetration of the victim.

After the prosecution rested, defendant moved for a directed verdict. Defense counsel argued that the only evidence presented was the "flawed confession," that the victim did not know what happened, and that the prosecution was unable to present any other physical evidence. The trial court denied defendant's motion and found sufficient evidence that there was a factual question requiring jury determination. Defense counsel did not present any additional witnesses.

Subsequently, the jury convicted defendant as stated earlier. Before sentencing, defendant, again, moved for directed verdict on the basis of the *corpus delicti* rule, arguing that his confession was inadmissible because it was the only evidence of his guilt. Defendant argued that there were no witnesses to any sexual assault, that the investigating officer knew that the victim had no memory of what happened to her, and that the victim herself had no memory of what transpired. Defendant argued that there were multiple explanations for the victim's state of undress and her anal pain, including her IBS condition, and without defendant's confession, there was no evidence beyond a reasonable doubt that the victim was penetrated or that sexual contact had occurred.

After oral arguments, the trial court denied defendant's motion, reemphasizing the testimony that the victim remembered going to bed dressed and that she woke up undressed next to defendant and how that was enough for a preponderance of the evidence to permit the admission of defendant's confession, even not considering the victim's testimony regarding her anal pain. The trial court explained that the victim's testimony at the evidentiary hearing was not sufficient to convict defendant of CSC-III, but with the proper admission of defendant's confession, the jury was provided with the evidence necessary for both convictions of CSC-III and CSC-IV. Subsequently, defendant was sentenced as stated earlier.

Defendant now appeals.

## II. *CORPUS DELICTI*

We review the trial court's decision to admit or exclude evidence for an abuse of discretion. *People v Herndon*, 246 Mich App 371, 406; 633 NW2d 376 (2001). "This Court reviews a lower court's decision regarding the *corpus delicti* requirement for an abuse of discretion." *People v Burns (After Remand)*, 250 Mich App 436, 438; 647 NW2d 515 (2002). "An abuse of discretion

occurs when the trial court's decision falls outside the range of principled outcomes." *People v Olney*, 327 Mich App 319, 325; 933 NW2d 744 (2019). "A trial court also necessarily abuses its discretion when it makes an error of law." *People v Al-Shara*, 311 Mich App 560, 566; 876 NW2d 826 (2015). "[A] trial court's decision on a close evidentiary question ordinarily cannot be an abuse of discretion." *People v Cameron*, 291 Mich App 599, 608; 806 NW2d 371 (2011) (quotation marks and citation omitted).

In Michigan, it has long been the rule that proof of the *corpus delicti* is required before the prosecution is allowed to introduce the inculpatory statements of an accused. *People v Williams*, 422 Mich 381, 388; 373 NW2d 567 (1985).[1] "The *corpus delicti* rule is designed to prevent the use of a defendant's confession to convict him of a crime that did not occur." *People v Konrad*, 449 Mich 263, 269; 536 NW2d 517 (1995). Later, this Court held that "new res gestae interpretation was not limited to homicide prosecutions, but 'is satisfied in any criminal case if the prosecution shows that the specific injury or loss has occurred, and that some person's criminality was the source or cause of the injury.' " *Hayden*, 205 Mich App at 413, quoting *People v Cotton*, 191 Mich App 377, 389; 478 NW2d 681 (1991).

Under the *corpus delicti* rule, a defendant's confession may only be admitted into evidence "when the prosecutor presents direct or circumstantial evidence, independent of the confession, establishing (1) the occurrence of the specific injury and (2) some criminal agency as the source of the injury." *Cotton*, 191 Mich App at 394. This rule does not require "independent proof of each and every element of the particular grade" of crime charged as a condition to admit a defendant's confession. *Williams*, 422 Mich at 391. The corpus delicti of criminal sexual conduct is a sexual act committed as the result of a criminal agency, and a defendant's confession can be used to establish which degree of criminal sexual conduct was committed and that defendant is the person who committed the offense. See *Hayden,* 205 Mich App at 413-414. The *corpus delicti* rule must be shown by a preponderance of the evidence. *Burns*, 250 Mich App at 438. And, the *corpus delicti* may be established by circumstantial evidence and reasonable inferences. *People v Allen*, 390 Mich 383, 385; 212 NW2d 21 (1973), adopting *People v Allen*, 39 Mich App 483, 494; 197 NW2d 874 (1972) (LEVIN, P.J., dissenting). The actions of a defendant before and after an alleged crime may be used to circumstantially establish the criminal agency prong of the rule. *People v Modelski*, 164 Mich App 337, 345-346; 416 NW2d 708 (1987). "Once this showing is made, a defendant's confession may be used to establish identity, intent, or aggravating circumstances." *Cotton*, 191 Mich App at 394. Additionally, a defendant's confession then may be used to elevate the crime to one of a higher degree or to establish aggravating circumstances. *Id*. at 390.

Defendant was initially charged with CSC-III, and it was on this charge that the trial court denied defendant's motion to suppress his confession. Defendant seems to argue that because the trial court determined that there was no specific evidence of penetration apart from defendant's confession, the *corpus delicti* rule was not satisfied. However, defendant's argument does not

---

[1] For example, *Williams* "established the rule that the corpus delicti of a first degree, premeditated murder was shown by the death of the victim and some criminal agency as the cause." *People v Hayden*, 205 Mich App 412, 413; 522 NW2d 336 (1994).

have merit. Instead, as previously mentioned, when proving that the *corpus delicti* is satisfied for a charge of criminal sexual assault, regardless of the degree, the prosecution is only required to demonstrate both a specific injury and that a criminal agency or a criminal act was the source of the injury. *Hayden*, 205 Mich App at 413-414.

Defendant was charged with CSC-III, MCL 750.520d(1)(c), which provides as follows:

> A person is guilty of criminal sexual conduct in the third degree if the person engages in sexual penetration[2] with another person and if any of the following circumstances exist:
>
> * * *
>
> (c) The actor knows or has reason to know that the victim is mentally incapable, mentally incapacitated, or physically helpless.

Defendant was also charged with CSC-IV, MCL 750.520e(1)(c), which provides as follows:

> A person is guilty of criminal sexual conduct in the fourth degree if he or she engages in sexual contact[3] with another person and if any of the following circumstances exists:
>
> (c) The actor knows or has reason to know that the victim is mentally incapable, mentally incapacitated, or physically helpless.

For both offenses, a victim is "physically helpless" if the victim is "unconscious, asleep, or for any other reason is physically unable to communicate unwillingness to an act." MCL 750.520a(m).

In this case, evidence was presented at the evidentiary hearing that the victim was drinking with a group of friends, including defendant, at various bars. She became ill and went back to defendant's home, which she had done in the past during similar group outings. The trial court

---

[2] "Sexual penetration" means "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required." MCL 750.520a(r).

[3] "Sexual contact" includes

> the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification, done for a sexual purpose, or in a sexual manner for:
>
> (*i*) Revenge.
>
> (*ii*) To inflict humiliation.
>
> (*iii*) Out of anger. [MCL 750.520a(q).]

was presented with evidence that defendant offered for her to stay in his room and that he would not stay in the room with her. Although the victim could not remember if she removed her coat and shoes, the victim knew that she had gone to bed fully dressed. However, in the early morning hours, the victim woke up shivering and, in a state of panic, she looked down to see that her underwear and pants were removed and that her bra and both shirts were lifted over her chest exposing her breasts. The trial court was presented with evidence that the victim glanced over and saw defendant sleeping in the bed next to her after defendant told the victim that he would sleep elsewhere. The victim expressed that she was so confused that she hurried to defendant's roommate's room, and explained to him that she was confused and asked him to retrieve her clothing from defendant's room. The roommate did so, and the victim quickly dressed and left the house as soon as she possibly could. The victim then had a brief text conversation with defendant, presenting additional evidence of her confusion and frustration that she woke up undressed.

The circumstantial evidence presented was sufficient to reasonably infer, by a preponderance of the evidence, that some sort of sexual assault occurred and that defendant likely committed the sexual assault. See *Cotton*, 191 Mich App at 394 ("In summary, we hold that the corpus delicti rule is satisfied and a defendant's confession may be admitted into evidence when the prosecutor presents direct or circumstantial evidence, independent of the confession, establishing (1) the occurrence of the specific injury and (2) some criminal agency as the source of the injury. Once this showing is made, a defendant's confession may be used to establish identity, intent, or aggravating circumstances."). In order to permit the admission of defendant's confession, the trial court needed to find that the evidence provided was sufficient for a preponderance of the evidence that a sexual assault occurred. A preponderance of the evidence "means such evidence as, when weighed with that opposed to it, has more convincing force and the greater probability of truth." *People v Cross*, 281 Mich App 737, 740; 760 NW2d 314 (2008).

After observing the victim intoxicated and getting sick in the bathroom, defendant told the victim that she could sleep in his bedroom. After the victim showed hesitation, defendant told her that he would sleep elsewhere. Contrary to what defendant told the victim and unknowingly to the victim as she was asleep, defendant came back into the bedroom. The victim went to bed fully dressed and woke up mostly undressed with defendant lying next to her. The trial court expressed its inferences regarding the victim's situation and explained that "anytime an adult person wakes up having recalled going to sleep fully clothed and wakes up unclothed in a strange—strange place or next to a person, that it's certainly is enough, with other circumstances to establish that some sort illegal sexual activity occurred." On the basis of the evidence presented to the trial court, there was sufficient evidence for the trial court to deny defendant's request to suppress his confession, and the trial court's determination to admit defendant's confession fell within the range of principled outcomes.

Subsequently, at the jury trial, the trial court was presented with consistent testimony from the victim regarding the events that occurred on the night of the incident. Further, the trial court was also presented with testimonial evidence from defendant's roommate that the victim came into his room in a state of confusion and asked him to retrieve her pants from defendant's room, which served to corroborate the victim's testimony. The trial court also heard testimonial evidence that the victim and defendant did not have a sexual relationship and were considered to be friends only. Finally, defendant's confession was presented to the trial court in which defendant admitted to touching the victim's breasts and penetrating her vagina with his fingers as she was asleep on top

of the covers of his bed. Additionally, evidence of the victim's physical helplessness was presented including the victim's intoxication, the victim's suspicions of being drugged, the victim getting sick at the bar and then at defendant's home, the victim passing out and going to sleep at the end of the night, and the victim's lack of memory regarding what occurred. Altogether, the trial court was presented with sufficient evidence for a reasonable jury to convict defendant of both CSC-III and CSC-IV.

Defendant cites several cases that are distinguishable from the facts of this case because, unlike the victims in the majority of the cases defendant cited, the victim did not have any recollection of the sexual assault that occurred. Therefore, the trial court was left with a unique situation in which it had to determine that the victim was a victim of sexual assault by a preponderance of the evidence using purely circumstantial evidence. Defendant argues that equally possible explanations do not establish sufficiency for a preponderance-of-the-evidence standard of proof. Defendant relies on those other possible explanations for the victim's anal pain and the victim's state of undress. The trial court did not rely on the victim's anal pain in its explanation of the evidence supporting a preponderance of the evidence that a sexual assault occurred, however. Although the trial court admitted that there could have been other explanations for the victim's state of undress, the trial court was adamant that an adult going to bed fully dressed and then waking up undressed next to someone who said that he was going to sleep elsewhere was sufficient to meet the *corpus delicti* of a sexual assault case regardless of other possible explanations.

Considering everything presented to the trial court, we agree. The victim had memories of getting sick at defendant's home and defendant offering his room to her, she remembered defendant telling her that he would sleep elsewhere, and she remembered defendant leaving the room. The victim explained that she does not sleep undressed, even at her own home, and certainly does not sleep undressed when she sleeps somewhere else. Additionally, she remembered going to sleep fully clothed on top of the covers. To her surprise, she woke up cold and unclothed with defendant next to her. Instead of grabbing her clothes on her own, she panicked and ran to her friend's room, asking him to get her clothes for her. The victim's reaction implies that the victim was panicked, confused, and uncomfortable as a result of her situation. She immediately explained to defendant's roommate that something was not right. Based on the victim's recollections from the night of the incident, her state of undress when she woke up, and her reaction after the fact, we conclude that the trial court properly determined that there was sufficient evidence that a sexual injury occurred and a criminal agency or act was the source of that injury, permitting the admission of defendant's confession. *Hayden*, 205 Mich App at 413-414; *Cotton*, 191 Mich App at 394. Accordingly, the trial court did not abuse its discretion on the basis of *corpus delicti*.

Affirmed.

/s/ Kathleen A. Feeney
/s/ Michelle M. Rick
/s/ Noah P. Hood