*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
May 9, 2019

Plaintiff-Appellee,

v

No. 342181
Monroe Circuit Court
LC No. 17-243500-FC

DERRIUS JAVONTE THORNTON,

Defendant-Appellant.

Before: MURRAY, C.J., and JANSEN and RIORDAN, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of armed robbery, MCL 750.529, conspiracy to commit armed robbery, MCL 750.157a; MCL 750.529, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced, as a second-offense habitual offender, MCL 769.10, to 180 to 360 months' imprisonment for the armed robbery and conspiracy to commit armed robbery convictions, and two years' imprisonment for the felony-firearm conviction. We affirm defendant's convictions, but remand for resentencing.

## I. RELEVANT FACTUAL BACKGROUND

This case arises out of the robbery of Jonathan Pennington in the late hours of March 9, 2017. On March 9, 2017, Skyler Pendleton contacted Pennington via Facebook and asked to purchase marijuana for himself and his friend. That friend was defendant. Pennington agreed to sell marijuana to Pendleton, and Pendleton requested that Pennington meet him at 1206 Vineyard Drive in Monroe Township, Michigan to complete the transaction.

Defendant and Pendleton, were driven by Amanda Grider in Grider's truck to meet with Pennington. When Pennington arrived, Pendleton entered into the passenger seat of his car and defendant got into the rear passenger seat. Pennington exited his car to pull the marijuana from the trunk, and then got back into the driver's seat and showed defendant and Pendleton the marijuana. As Pennington pulled a digital scale from the center console, defendant held a revolver to his head and told Pennington that he and Pendleton were taking the marijuana. Pendleton grabbed the marijuana from Pennington's hands, and also attempted to take $2,000

-1-

cash from Pennington's pockets. As Pendleton reached into Pennington's pockets, Pennington attempted to push defendant away. Defendant then hit Pennington in the head with the revolver three or four times while defendant punched Pennington in the side. Pennington put his car into reverse and attempted to speed away, but lost control and hit a nearby house. Defendant and Pendleton got out of Pennington's car, got into Grider's truck, and drove away.

A friend of defendant's, Melissa Baltrip, recalled that on March 11, 2017, defendant and a man named Frankie drove her home from a friend's house. While in the car, defendant mentioned an armed robbery from the night before where defendant had stolen marijuana. Defendant described hitting Pennington in the head with a gun, mentioned that Pendleton was involved, and that the robbery took place on the west side of Monroe Township. Defendant also mentioned that he and Pendleton chose to commit the robbery on the west side of town because the power was out due to a windstorm.

Defendant was found guilty of armed robbery, conspiracy to commit armed robbery, and felony-firearm. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant challenges his conviction of conspiracy to commit armed robbery by arguing that there was insufficient evidence demonstrating that defendant entered into an agreement with Pendleton to rob Pennington. We disagree.

This Court reviews challenges to the sufficiency of the evidence de novo. *People v Miller*, ___ Mich App ___, ___; ___ NW2d ___ (2019) (Docket No. 338453); slip op at 8. "We review the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could find that the prosecution proved the crime's elements beyond a reasonable doubt. Conflicting evidence and disputed facts are to be resolved by the trier of fact." *Id.*; slip op at 8 (citations omitted). "Circumstantial evidence, and reasonable inferences arising from the evidence, may constitute satisfactory proof of the elements of the offense. This Court should not interfere with the jury's role of determining the weight of the evidence or the credibility of witnesses." *People v Muhammad*, ___ Mich App ___, ___; ___ NW2d ___ (2018) (Docket No. 338300); slip op at 9 (quotation marks, brackets, and citations omitted). We resolve any evidentiary conflicts in favor of the prosecution. *People v Henderson*, 306 Mich App 1, 9; 854 NW2d 234 (2014).

Defendant was convicted of conspiracy to commit armed robbery. MCL 750.157a provides that "[a]ny person who conspires together with 1 or more persons to commit an offense prohibited by law, or to commit a legal act in an illegal manner is guilty of the crime of conspiracy." This Court has defined conspiracy as "[a] mutual agreement or understanding, express or implied, between two or more persons to commit a criminal act or to accomplish a legal act by unlawful means." *People v Cotton*, 191 Mich App 377, 392; 478 NW2d 681 (1991). In essence, "[t]he gist of a conspiracy is the unlawful agreement." *People v Mass*, 464 Mich 615, 632; 628 NW2d 540 (2001). Conspiracy requires proof of the defendant's specific intent to conspire with others, as well as the defendant's intent to accomplish an illegal objective. *Id.* at 629. "The intent, including knowledge of the intent, must be shared by the individuals." *People v Jackson*, 292 Mich App 583, 588; 808 NW2d 541 (2011). However, a coconspirator need not

"know the full scope of the conspiracy or participate in carrying out each detail, or that he was acquainted with each of his coconspirators or knew the exact part played by each of them." *People v Grant*, 455 Mich 221, 236, n 20; 565 NW2d 389 (1997). The crime of conspiracy is complete once the agreement is formed. *Jackson*, 292 Mich App at 587.

The elements of armed robbery are found in MCL 750.529, which provides:

(1) the defendant, in the course of committing a larceny of any money or other property that may be the subject of a larceny, used force or violence against any person who was present or assaulted or put the person in fear, and (2) the defendant, in the course of committing the larceny, either possessed a dangerous weapon, possessed an article used or fashioned in a manner to lead any person present to reasonably believe that the article was a dangerous weapon, or represented orally or otherwise that he or she was in possession of a dangerous weapon. [*People v Chambers*, 277 Mich App 1, 7; 742 NW2d 610 (2007) (footnotes omitted).]

Therefore, to prove that defendant conspired to commit armed robbery, the prosecution must proffer sufficient evidence to show that defendant knowingly entered into an agreement with Pendleton to use force or violence against Pennington, in the course of committing a larceny, and that defendant possessed a dangerous weapon, in the course of committing the larceny.

We conclude that the prosecution presented sufficient evidence for a rational jury to find beyond a reasonable doubt that defendant intended to conspire with Pendleton to rob Pennington of marijuana and money through force and violence, and that defendant possessed a dangerous weapon. Pennington testified that Pendleton contacted him to arrange a meeting wherein Pendleton and defendant could buy marijuana from him. After Pennington retrieved marijuana from his trunk, defendant held a gun to Pennington's head and cocked the gun's hammer. Pendleton grabbed the marijuana from Pennington and attempted to take whatever was in Pennington's pockets. When Pennington tried to resist, Pendleton and defendant attacked him, which left Pennington bruised and bleeding.

Although Grider testified at trial that she was unaware of any plan to rob Pennington, she testified that she drove defendant and Pendleton to meet Pennington on Vineyard Drive on March 9, 2017. Grider saw defendant and Pendleton get into Pennington's car shortly before there was an altercation inside Pennington's car. Grider also saw defendant point a gun at Pennington before she drove away. Grider's testimony, which was consistent with Pennington's testimony, demonstrates that there was a coordinated effort between defendant and Pendleton to rob Pennington of marijuana and money. Defendant's statement to Baltrip, that he and Pendleton intended to steal marijuana from Pennington, and that defendant and Pendleton chose a meeting location in an area of town where the power was out, is further evidence that the codefendants entered into an agreement to rob Pennington of money and marijuana.

Although there is no direct evidence of an express agreement between defendant and Pendleton to rob Pennington, "direct proof of agreement is not required, nor is proof of a formal agreement necessary." *Cotton*, 191 Mich App at 393. The conduct of the parties and surrounding circumstances may be sufficient to establish an agreement, *id.*, and can shed light on

-3-

the coconspirators' intentions, *People v Justice (After Remand)*, 454 Mich 334, 347; 562 NW2d 652 (1997). Based on the evidence presented on trial, a reasonable finder of fact could conclude that defendant knowingly entered into an agreement with Pendleton to use force or violence against Pennington so that defendant and Pendleton could rob Pennington of money and marijuana, and that defendant possessed a handgun to accomplish this objective. Accordingly, the prosecution presented sufficient evidence to sustain defendant's conviction for conspiracy to commit armed robbery.

## III. DOUBLE JEOPARDY

Second, defendant argues that his convictions for armed robbery and conspiracy to commit armed robbery violate double jeopardy protections because, in his specific case, "evidence of the conspiracy [was] satisfied merely by evidence of the" armed robbery. We disagree.

To preserve a claim that a defendant's convictions violate double jeopardy, the defendant must raise the issue with the trial court. See *People v Barber*, 255 Mich App 288, 291; 659 NW2d 674 (2003) (concluding that the defendant failed to preserve his argument on appeal that his convictions for burning real property and burning a dwelling home violated double jeopardy because the defendant raised the issue for the first time on appeal). Defendant argues for the first time on appeal that his convictions of armed robbery and conspiracy to commit armed robbery violate double jeopardy. "However, a double jeopardy issue presents a significant constitutional question that will be considered on appeal regardless of whether the defendant raised it before the trial court." *People v McGee*, 280 Mich App 680, 682; 761 NW2d 743 (2008).

This Court reviews an unpreserved double jeopardy claim for plain error affecting defendant's substantial rights. *Barber*, 255 Mich App at 291, citing *People v Carines*, 460 Mich 750, 763-764, 597 NW2d 130 (1999). To avoid forfeiture under the plain-error rule, the defendant must meet three requirements: "1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Carines*, 460 Mich at 763 (citation omitted). The third element generally requires the defendant to demonstrate "prejudice, i.e., that the error affected the outcome of the lower court proceeding." *Carines*, 460 Mich at 763. Even if the defendant can show all three elements, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. Similarly, this Court reviews questions of law regarding statutory interpretation and the application of state and federal constitutions de novo. *People v Miller*, 498 Mich 13, 19; 869 NW2d 204 (2015).

Both the United States and the Michigan Constitutions protect a criminal defendant from being twice placed in jeopardy for a single offense. US Const, Am V; Const 1963, art 1, § 15; *Barber*, 255 Mich App at 291-292. Double jeopardy protects a criminal defendant "against multiple punishments, or successive prosecutions, for the same offense." *Barber*, 255 Mich App at 292, citing *People v Wilson*, 454 Mich 421, 427; 563 NW2d 44 (1997), and *People v Torres*, 452 Mich 43, 63; 549 NW2d 540 (1996). Double jeopardy serves as a restraint on the prosecution and the trial court, but "does not limit the Legislature's ability to define criminal

offenses and establish punishments . . . ." *People v Ford*, 262 Mich App 443, 448; 687 NW2d 119 (2004).

Defendant's argument is fundamentally flawed in that it fails to recognize the general concept of double jeopardy. By focusing on the evidence presented in his trial, defendant essentially raises a second sufficiency of the evidence claim, cloaked as a double jeopardy argument. Double jeopardy focuses on the specific statutes at issue and the legislative intent; it is not concerned with the evidence presented at trial. *People v Denio*, 454 Mich 691, 706; 564 NW2d 13 (1997). See also *People v Parker*, 230 Mich App 337, 342; 584 NW2d 336 (1998) ("Judicial examination of the scope of double jeopardy protection under both constitutions is confined to a determination of legislative intent.").

This Court applies the "same-elements" test to determine "whether the Legislature intended to impose multiple punishments for violations of more than one statute during the same transaction . . . ." *Ford*, 262 Mich App at 448. "If the Legislature clearly intended to impose multiple punishments, the imposition of multiple sentences is permissible regardless of whether the offenses have the same elements, but if the Legislature has not clearly expressed its intent, multiple offenses may be punished if each offense has an element that the other does not." *McGee*, 280 Mich App at 683.

"[C]onspiracy and the underlying substantive offense are separate and distinct crimes;" and conspiracy does not merge with the offense that is committed in furtherance of the conspiracy. *People v Rodriguez*, 251 Mich App 10, 18; 650 NW2d 96 (2002). Therefore, double jeopardy is not violated when a defendant is convicted of conspiracy to commit an offense and the underlying substantive offense, even if committed in the same criminal transaction. See *Denio*, 454 Mich at 712 (explaining that it is irrelevant, for double jeopardy purposes, that conspiracy and the substantive offense were committed in the same criminal transaction). Moreover, additional facts—defendant and Pendleton's planning, Pendleton's communication with Pennington, and defendant's comments to Baltrip—were necessary to prove conspiracy, but not necessary to prove the armed robbery. Accordingly, we conclude that defendant's convictions did not violate double jeopardy.

## IV. SENTENCING

Third, defendant argues that he is entitled to resentencing because the trial court clearly erred when assessing 10 points for Offense Variable (OV) 4, 10 points for OV 9, and 10 points for OV 14. We agree that defendant is entitled to resentencing because the trial court clearly erred in scoring OV 9 and OV 14, and if the trial court properly calculated OVs 9 and 14, defendant's minimum sentence of 180 months in prison would be outside the correct guidelines minimum sentence range.

### A. MCL 777.34 (OV 4)

This Court reviews a sentencing court's factual findings regarding scoring variables for clear error, which must be supported by a preponderance of the evidence. *People v Gloster*, 499 Mich 199, 204; 880 NW2d 776 (2016). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question

of statutory interpretation," which this Court reviews de novo. *Id.*, quoting *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). Clear error exists if this Court is "left with a definite and firm conviction that a mistake has been made." *People v Stone*, 269 Mich App 240, 242; 712 NW2d 165 (2005). Further, the "trial court may consider all evidence in the record, including but not limited to" the presentence investigation report (PSIR). *People v Jackson*, 320 Mich App 514, 519; 907 NW2d 865 (2017).

OV 4 considers the psychological injury to a victim. MCL 777.34(1). Defendant was assessed 10 points for OV 4, which is appropriate if "[s]erious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(a). An assessment of 10 points for OV 4 is appropriate if the victim suffered "personality changes, anger, fright, or feelings of being hurt, unsafe, or violated." *People v Armstrong*, 305 Mich App 230, 247; 851 NW2d 856 (2014). The fact that the victim did not seek treatment is not conclusive, MCL 777.34(2), and a trial court's observations of the victim's demeanor at trial can support a finding of psychological injury, *People v Schrauben*, 314 Mich App 181, 197; 886 NW2d 173 (2016). However, "points may not be assessed solely on the basis of a trial court's conclusion that a 'serious psychological injury' would normally occur as a result of the crime perpetrated against the victim." *People v White*, 501 Mich 160, 162; 905 NW2d 228 (2017).

Defendant claims that the trial court clearly erred by assessing 10 points for OV 4 because there is no evidence that Pennington suffered a psychological injury. However, the victim's impact statement section of defendant's PSIR states:

> This writer did not receive a Victim's Impact Statement from the Prosecutor's Office, but was able to establish phone contact with Mr. Pennington on . . . [November 27, 2017]. Mr. Pennington reported he feels paranoid that he is going to be attacked again. He stated that[,] especially when he is in his car, he worries about people running up on him and robbing him again. Mr. Pennington reported he gets intense anxiety attacks and experiences flashbacks of being robbed. Mr. Pennington stated he felt very nervous, especially through the Court proceedings, and is ready for this to be over with. Mr. Pennington stated the defendant's sentencing will provide him with some relief and that he is trying to move forward.

The trial court relied on defendant's PSIR to find that Pennington suffered "psychological injury and damage" as a result of the events of March 10, 2017. Pennington's description of his psychological state was not simply a statement that he was fearful during the crime itself; rather he described a psychological injury that continues to plague him. See *White*, 501 Mich at 162 n 3 ("[A]bsent other evidence of psychological harm, fear felt during the crime is insufficient to assess points for this variable.") (Emphasis omitted). The trial court did not clearly err by assessing 10 points for OV 4.

### B. MCL 777.39 (OV 9)

Defendant next challenges the scoring of OV 9, which considers the number of victims. MCL 777.39. In pertinent part, MCL 777.39(1) provides:

(1) Offense variable 9 is number of victims. Score offense variable 9 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

* * *

(c) There were two to nine victims who were placed in danger of physical injury or death, or four to nineteen victims who were placed in danger of property loss ...................................................................................... 10

(d) There were fewer than two victims who were placed in danger of physical injury or death, or fewer than four victims who were placed in danger of property loss ....................................................................................... 0

For the purposes of scoring OV 9, each individual "who was placed in danger of physical injury or loss of life is considered a victim." MCL 777.39(2)(a). A person may be considered a victim "even if he or she did not suffer actual harm; a close proximity to a physically threatening situation may suffice." *People v Gratsch*, 299 Mich App 604, 624; 831 NW2d 462 (2013), vacated in part on other grounds 495 Mich 876 (2013). However, a victim must be a direct victim of the crime, rather than a member of the community that was indirectly affected by the commission of the crime. *People v Carrigan*, 297 Mich App 513, 151-516; 824 NW2d 283 (2012).

Pennington constitutes a victim for the purposes of OV 9. However, the record evidence is void of any other possible victim to warrant a 10-point assessment. The prosecution did not present any evidence, at trial or sentencing, that 1211 Vineyard Drive was actually occupied when Pennington's car hit the house. The owner of 1211 Vineyard Drive could not be reached, and there was no other information in defendant's PSIR regarding another possible victim. Yet, the trial court concluded that 10 points was appropriate because Pennington's car hit a habitable dwelling where at least one person resided and there was a "potential for victims" and "the potential [for] injury . . . ." Accordingly, the trial court clearly erred by assessing 10 points for OV 9 because a preponderance of the evidence does not support a finding that the house was actually occupied and that there were two or more victims that were placed in danger of physical injury or loss of life. No points should have been assessed for OV 9.

C. MCL 777.44 (OV 14)

OV 14 contemplates the offender's role in a multiple offender situation. MCL 777.44(1)(a). The trial court may assess 10 points if a preponderance of the evidence demonstrates that "[t]he offender was a leader in a multiple offender situation." MCL 777.44(1)(a). Zero points are appropriate if "[t]he offender was not a leader in a multiple offender situation." MCL 777.44(1)(b). The sentencing court must consider the entire criminal transaction to determine the offender's actual role. MCL 777.44(2)(a). For the purposes of OV 14, a leader is the individual who "acted first, or gave directions 'or was otherwise a primary casual or coordinating agent.' " *People v Dickinson*, 321 Mich App 1, 22; 909 NW2d 24 (2017), quoting *People v Rhodes (On Remand)*, 305 Mich App 85, 90; 849 NW2d 417 (2014). A defendant may have been involved in a multiple offender situation even though accompanied by

only one other person and even though that other person is not charged in connection with the crime for which the defendant was convicted. See *People v Jones*, 299 Mich App 284; 829 NW2d 350 (2013), vacated on other grounds 494 Mich 880 (2013). If only two offenders were involved in the criminal transaction, only one individual may be considered the leader. *Rhodes (On Remand)*, 305 Mich App at 89.

The trial court found that defendant was the leader because he was the individual who introduced the gun and struck Pennington in the head. A "defendant's exclusive possession of a gun during the criminal transaction is *some* evidence of leadership," but does not, standing alone, "support the finding by the trial court that [the] defendant issued orders that [his or her codefendant] did not." *Id*. at 90 (declining to hold that the defendant's mere possession of a gun posed a greater threat to a victim sufficient to establish that the defendant was a leader within the meaning of OV 14).

The evidence unequivocally supports the trial court's factual determination that defendant possessed a gun and Pendleton—the only other person involved in the robbery—did not. However, the evidence does not show that defendant acted first, gave Pendleton directions or orders, or "displayed any greater amount of initiative beyond employing a more dangerous instrumentality of harm . . . ." See *id*. Pennington testified that Pendleton, not defendant, contacted him to buy marijuana and dictated the meeting location. Pennington also testified that both defendant and Pendleton attacked him. Baltrip testified that both defendant and Pendleton chose the west side to rob Pennington because the power was out in the area, and that both men planned to steal money and marijuana from Pennington. Baltrip's testimony suggests that there was a joint effort, without a sole leader, to rob Pennington. Therefore, in absence of any evidence demonstrating that defendant played some role in directing or initiating the criminal transaction itself, a preponderance of the evidence does not support 10-point assessment for OV 14.

## D. RESENTENCING

A defendant is entitled to resentencing if his sentence was based on an inaccurate scoring of the guidelines that affected the applicable sentencing guidelines range. *Id*. at 91. Defendant's Prior Record Variable (PRV) level was D and his total OV score was 55 points, resulting in an OV level of III and a guidelines minimum sentence range of 108 to 225 months in prison. Had OVs 9 and 14 been properly scored at zero points, defendant's total OV score would be 35 points and his OV level would change to II. Factoring in defendant's status as a second-offense habitual offender, defendant's corrected guidelines range would be 81 to 168 months in prison. See MCL 777.62. Defendant's minimum sentence of 180 months in prison is therefore outside the correct guidelines range, and entitles him to resentencing.

We affirm defendant's convictions, but remand to the trial court for resentencing. We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Kathleen Jansen
/s/ Michael J. Riordan