*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MARSHA SHARLENE RUTHERFORD,

Defendant-Appellant.

UNPUBLISHED
October 17, 2019

No. 343185
Oakland Circuit Court
LC No. 2016-259897-FH

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MARSHA SHARLENE RUTHERFORD,

Defendant-Appellant.

No. 343188
Oakland Circuit Court
LC No. 2016-260317-FH

Before: METER, P.J., and O'BRIEN and SWARTZLE, JJ.

PER CURIAM.

These consolidated appeals involve defendant's eight convictions arising from two cases that were consolidated for a single jury trial. In each case, the jury convicted defendant of identity theft, MCL 445.65, conspiracy to commit identity theft, MCL 750.157a; MCL 445.65, obtaining, possessing, or transferring personal identifying information with intent to commit identity theft, MCL 445.67, and attempt to obtain money of $1,000 or more but less than $20,000 by false pretenses, MCL 750.218(4). In LC No. 2016-259897-FH, the trial court sentenced defendant to prison terms of 23 months to 5 years for the identity theft conviction, six months to five years for the conspiracy conviction, six months to three years for the unlawful use of personal identifying information conviction, and 6 to 30 months for the attempted false pretenses conviction. In LC No. 2016-260317-FH, the court sentenced defendant to prison terms of 17 months to 5 years for the identity theft conviction, six months to five years each for the

-1-

conspiracy and unlawful use of personal identifying information convictions, and 6 to 30 months for the attempted false pretenses conviction. In both cases, the trial court ordered that defendant's sentence for identity theft be served consecutive to her other three sentences, which were to be served concurrently. Defendant appeals as of right in both cases. We remand each case for further proceedings to allow the trial court to articulate its rationale for imposing consecutive sentences or to issue a judgment of sentence to reflect that defendant's sentences are to be served concurrently. But in all other respects, we affirm.

## I. FACTUAL OVERVIEW

Defendant's eight convictions arise from her use of other persons' personal identifying information to fraudulently obtain money or credit in March and April 2010 in Oakland County. Defendant's convictions in LC No. 2016-259897-FH (Docket No. 343185) arise from her use of Roslyn Jackson's personal identifying information to obtain fraudulent loans and credit cards, and from conspiring with Delores Mitchell to attempt to obtain a fraudulent loan using the social security number of Marilyn Hunt. Defendant's convictions in LC No. 2016-260317-FH (Docket No. 343188) arise from her use of Clay Weddell's personal identifying information in a fraudulent manner to obtain money, and from conspiring with Timeka Tandy and Latonya Richardson to attempt to obtain a loan using Weddell's social security number. At trial, the defense argued that there was no evidence that defendant was involved in obtaining any fraudulent loans, and that Jackson's testimony was not credible.

## II. MOTION FOR A DIRECTED VERDICT

Defendant first argues that the prosecution failed to present sufficient evidence to support convictions for the charged offenses, and therefore the trial court erred by denying her motion for a directed verdict of acquittal on all charges. We disagree.

"When reviewing a trial court's decision on a motion for a directed verdict, this Court reviews the record de novo to determine whether the evidence, viewed in the light most favorable to the prosecution, could persuade a rational trier of fact that the essential elements of the crime charged were proved beyond a reasonable doubt." *People v Parker*, 288 Mich App 500, 504; 795 NW2d 596 (2010). "A challenge to the trial court's decision on a motion for a directed verdict has the same standard of review as a challenge to the sufficiency of the evidence, except that only the evidence presented before the motion for a directed verdict was made is considered." *People v Schultz*, 246 Mich App 695, 702; 635 NW2d 491 (2001).

## A. IDENTITY THEFT

As applicable to this case, the elements of identity theft are: (1) using or attempting to use the personal identifying information of another person, (2) to obtain credit or money, (3) with the intent to defraud or violate the law. MCL 445.65(1)(a)(*i*). "Personal identifying information" is defined by statute, in relevant part, as

> a name, number, or other information that is used for the purpose of identifying a specific person or providing access to a person's financial accounts, including, but not limited to, a person's name, address telephone number, driver license or state personal identification number [or] social security number. [MCL 445.63(q).]

Circumstantial evidence and reasonable inferences arising from the evidence can sufficiently prove the elements of a crime, including the defendant's state of mind, knowledge, or intent. *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008).

In LC No. 2016-259897-FH, the prosecution presented evidence that Jackson's nephew hand-delivered Jackson's personal identifying information, including Jackson's driver's license and social security number, to defendant on Jackson's behalf to determine if Jackson would be able to qualify for a loan to purchase a home. Soon thereafter, Jackson's information was used to apply for loans and credit cards, some of which were in defendant's name or the name of her company, PHC Global. For one of the Internet loan applications, defendant went to the Genisys Credit Union and identified herself as Jackson. Defendant admitted to the investigating detective that she had submitted the loan application to Genisys in Jackson's name, claiming that Jackson was her client. However, Jackson had not given defendant authorization to obtain loans or credit cards using her information. A jury could reasonably infer from this evidence that defendant used, or attempted to use, Jackson's personal identifying information to obtain money or credit with the intent to defraud Jackson and Genisys. The evidence that defendant refused to return Jackson's personal identifying information upon request, and that, after police involvement, defendant attempted to have Jackson sign documents giving her authorization to use Jackson's information, further supports a finding of identity theft. Thus, viewed in the light most favorable to the prosecution, the evidence was sufficient to support defendant's conviction of identity theft in LC No. 2016-259897-FH.

In LC No. 2016-260317-FH, the prosecution presented evidence that defendant, working with Richardson and Tandy, prepared an Internet loan application in the name of a fictitious person, "Jalie Carradine," using the social security number of Weddell. Defendant was aware that the social security number did not belong to Carradine. Weddell, who lived in Oklahoma, was unaware that his number was being used and had not authorized defendant to use it. Defendant submitted the loan application containing Weddell's social security number to Genisys in an attempt to procure a loan for $8,500. Defendant was to receive $2,500 from the loan proceeds as her payout. Again, a jury could reasonably infer from this evidence that defendant knowingly submitted a fraudulent loan application using Weddell's personal identifying information without his permission with the intent to defraud Genisys to obtain money. Accordingly, viewed in the light most favorable to the prosecution, the evidence was sufficient to support defendant's conviction of identity theft in LC No. 2016-260317-FH.

## B. CONSPIRACY TO COMMIT IDENTITY THEFT

Conspiracy is a specific intent crime, requiring the intent to combine with others and the intent to accomplish an illegal objective. MCL 750.157a; *People v Mass,* 464 Mich 615, 629; 628 NW2d 540 (2001). To prove the intent to combine with others, it must be shown that the intent, including knowledge, was possessed by more than one person. *People v Blume*, 443 Mich 476, 482, 485; 505 NW2d 843 (1993). For intent to exist, the defendant must know of the conspiracy, know of the objective of the conspiracy, and intend to participate cooperatively to further that objective. *Id*. Direct proof of a conspiracy is not essential; a conspiracy may be proven by circumstantial evidence or by reasonable inference, and no formal agreement is required. *People v Justice* (*After Remand*), 454 Mich 334, 347; 562 NW2d 652 (1997); *People v Cotton*, 191 Mich App 377, 393; 478 NW2d 681 (1991).

In LC No. 2016-259897-FH, the prosecution presented evidence that defendant supplied the social security number for an Internet loan application in Mitchell's name. The social security number did not belong to Mitchell, but to Hunt, who lived in New Mexico. Defendant admitted to the investigating detective that she submitted the loan application in Mitchell's name. After the electronic submission, defendant and Mitchell went to the credit union to fill out the necessary paperwork and obtain the loan disbursement. Defendant identified herself to a credit union employee as Mitchell's relative who was there to assist Mitchell with the paperwork. Defendant's and Mitchell's interactions and concordant behavior was evidence of their concert of action, which supported an inference of conspiracy to use Hunt's personal information to fraudulently obtain money from the credit union. Viewed in a light most favorable to the prosecution, the evidence was sufficient to show that defendant conspired with Mitchell to commit identity theft in LC No. 2016-259897-FH.

In LC No. 2016-260317-FH, the evidence discussed in part II(A) also provided a basis for the jury to infer that defendant conspired with Tandy and Richardson to commit identity theft. Viewed in a light most favorable to the prosecution, the evidence that defendant, Tandy, and Richardson met and agreed to submit a fraudulent loan application, using a fictitious name and Weddell's social security number (which they had no permission to use), in an attempt to deceitfully obtain loan proceeds of $8,500 (of which defendant was to receive $2,500), was sufficient to establish that defendant, Tandy, and Richardson had agreed to work together with the specific intent to commit identity theft. Further supporting a finding of a conspiracy is the evidence that, after Richardson no longer wanted to go through with obtaining the loan, defendant demanded her money because she had done her part by submitting the loan application. Thus, sufficient evidence was presented to sustain defendant's conviction of conspiracy to commit identity theft in LC No. 2016-260317-FH.

### C. UNLAWFUL USE OF PERSONAL IDENTIFYING INFORMATION

The prosecution presented sufficient evidence in both cases to support defendant's convictions of obtaining personal identifying information with the intent to commit identity theft. MCL 445.67(d) provides, in relevant part, that a person shall not "[o]btain or possess, or attempt to obtain or possess, personal identifying information of another person with the intent to use that information to commit identity theft or another crime." As previously noted, for purposes of this statute, "personal identifying information" includes "a person's name," "driver license," and "social security number." MCL 445.63(q). In LC No. 2016-259897-FH, there was evidence that defendant possessed Jackson's personal identifying information, including her name, a copy of her driver's license, and her social security number, and, as discussed earlier, used this personal identifying information with the intent to commit, and actually committed, identity theft. Similarly, in LC No. 2016-260317-FH, defendant possessed the social security number of Weddell, and, as also discussed earlier, used this personal identifying information with the intent to commit identity theft. Viewed in a light most favorable to the prosecution, this evidence was sufficient to support defendant's two convictions under MCL 445.67(d).

### D. ATTEMPTED FALSE PRETENSES

An attempt to commit an offense consists of two elements: "(1) an intent to do an act or to bring about certain consequences which would in law amount to a crime; and (2) an act in

furtherance of that intent which, as it is most commonly put, goes beyond mere preparation." *People v Jones*, 443 Mich 88, 100; 504 NW2d 158 (1993) (quotation marks and citation omitted). The elements of false pretenses are that: (1) defendant made a false statement or used a false pretense[1] relating to a past or existing fact; (2) defendant knew of the falsity at the time; (3) defendant had the intent to defraud or cheat when she made the statement or used the pretense; (4) the victim detrimentally relied on the false pretense or false statement and suffered a loss of money; and (5) defendant obtained something from the victim valued at $1,000 or more but less than $20,000. MCL 750.218(4)(a); *People v Lueth*, 253 Mich App 670, 680-681; 660 NW2d 322 (2002). For defendant to be convicted of attempted false pretenses, the prosecution must have proved beyond a reasonable doubt that defendant (1) had the specific intent to commit false pretenses and (2) committed an overt act toward the commission of the crime beyond mere preparation. See MCL 750.92; *People v Thousand*, 465 Mich 149, 164; 631 NW2d 694 (2001).

In LC No. 2016-259897-FH, the prosecution presented evidence that defendant submitted an Internet loan application to Genisys, seeking $10,000, in Mitchell's name and using Hunt's social security number, which defendant provided in the application. Defendant had no authorization to use Hunt's social security number and the number did not belong to the name on the application (Mitchell). Thus, the loan application contained fraudulent representations. Defendant thereafter accompanied Mitchell to the credit union where she falsely identified herself as Mitchell's relative, as defendant and Mitchell sought to obtain the proceeds from the fraudulent loan application. Viewed in a light most favorable to the prosecution, this evidence was sufficient to enable a rational trier of fact to find that the prosecution proved the elements of attempted false pretenses beyond a reasonable doubt.

Similarly, in LC No. 2016-260317-FH, the evidence that defendant prepared an Internet loan application, seeking $8,500, knowingly using a fictitious name and Weddell's social security number without his authorization, and submitted this application that contained the false information to Genisys with the intent to obtain money, was sufficient to support defendant's conviction of attempted false pretenses in that case.

## E. WEIGHT AND CREDIBILITY

In sum, the reasonable inferences arising from the evidence, considered together and viewed in a light most favorable to the prosecution, were sufficient to enable the jury to find beyond a reasonable doubt that defendant committed the charged offenses. Defendant's challenges to the evidence, including what inferences should have been drawn from the evidence, are related to the weight of the evidence rather than its sufficiency. *People v Scotts*, 80 Mich App 1, 9; 263 NW2d 272 (1977). These same challenges were presented to the jury during trial, and we will not interfere with the trier of fact's role of determining issues of weight and credibility. *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008). Defendant

---

[1] A false pretense "includes, but is not limited to, a false or fraudulent representation, writing, communication, statement, or message, communicated by any means to another person, that the maker of the representation, writing, communication, statement, or message knows is false or fraudulent." MCL 750.218(11).

appears to ignore that when evaluating the sufficiency of evidence, this Court is required to resolve all conflicts in the evidence in favor of the prosecution, *People v Lockett*, 295 Mich App 165, 180; 814 NW2d 295 (2012), that this deferential standard of review is the same whether the evidence is direct or circumstantial, *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000), and that it is well established that "circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime," *id.* (citation omitted). Consequently, we reject defendant's appellate challenges to the sufficiency of the evidence in support of her convictions.

## III. SENTENCE

### A. SCORING OF OV 19

In her next claim, defendant argues that the trial court erroneously scored offense variable (OV) 19 of the sentencing guidelines. We disagree. When reviewing a trial court's scoring decision, the trial court's "factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id.*

OV 19 addresses interference with the administration of justice. The trial court must score 10 points if "[t]he offender otherwise interfered with or attempted to interfere with the administration of justice." MCL 777.49(c). A defendant interferes with the administration of justice by "oppos[ing] so as to hamper, hinder, or obstruct the act or process of administering judgment of individuals or causes by judicial process." *People v Hershey*, 303 Mich App 330, 343; 844 NW2d 127 (2013). "Our Supreme Court has determined that the phrase 'interfered with or attempted to interfere with the administration of justice' is broader than the concept of obstruction of justice and that conduct subject to scoring under OV 19 'does not have to necessarily rise to the level of a chargeable offense . . . .' " *People v Passage*, 277 Mich App 175, 179-180; 743 NW2d 746 (2007) (citation omitted). When scoring OV 19, a court may consider the defendant's conduct after the completion of the sentencing offense. *People v Smith*, 488 Mich 193, 200; 793 NW2d 666 (2010).

The trial court assessed 10 points for OV 19 on the basis of its finding that, at a bond hearing, defendant lied to the court about entering a bank, which she was prohibited from doing as a condition of her bond. Defendant does not dispute that lying to the court in this context qualifies as "otherwise interfer[ing] with or attempt[ing] to interfere with the administration of justice" under OV 19, or that the evidence on which the trial court relied (defendant's sworn statement and video evidence from the bond hearing) was false. Rather, she asserts that, although she was "somewhat inarticulate in her explanation" at sentencing, she merely misunderstood the court's question and did not intentionally lie. She argues that, given her explanation, OV 19 was not supported by a preponderance of the evidence.

Contrary to defendant's contention, the trial court was not required to credit her explanation. The court had already clearly explained that defendant's sworn statement that she had not entered a bank and the video evidence showing that she had in fact done so supported a

finding that she lied to the court. The court was not required to further inquire into defendant's attempt to explain or justify her conduct. Moreover, defendant does not explain what valuable evidence could have been disclosed upon further inquiry. Indeed, defendant's proffered explanation was clear—she claimed that she misunderstood the question at the bond hearing—and the court was well able to evaluate the validity of this offered excuse. The trial court did not clearly err by finding that the 10-point score was warranted for OV 19. *Hardy*, 494 Mich at 438.

## B. CONSECUTIVE SENTENCES

Defendant also challenges the trial court's decision in both cases to order that her sentence for identity theft be served consecutive to her other three sentences. The prosecution concedes, and we agree, that remand for further proceedings is necessary.

"In Michigan, concurrent sentencing is the norm, and a consecutive sentence may be imposed only if specifically authorized by statute." *People v Ryan*, 295 Mich App 388, 401; 819 NW2d 55 (2012) (quotation marks and citation omitted). The parties do not dispute that MCL 445.69(4) gave the trial court discretion to impose a consecutive sentence for defendant's identity theft conviction. "[T]he decision to impose a consecutive sentence when not mandated by statute is reviewable for an abuse of discretion." *People v Norfleet*, 317 Mich App 649, 654; 897 NW2d 195 (2016). To facilitate appellate review, a trial court must "articulate on the record the reasons for each consecutive sentence imposed." *Id*. at 664-665. The court is required to "give particularized reasons" when imposing a consecutive sentence. *Id*. at 666.

As the prosecution concedes, the record shows that the trial court failed to articulate any particularized reasons for the consecutive sentences imposed. Therefore, remand is necessary. *Norfleet*, 317 Mich App at 664-665. On remand, the trial court must articulate its rationale for imposing consecutive sentences or correct the judgments of sentence to reflect that the sentences are to be served concurrently.

## IV. DEFENDANT'S STANDARD 4 BRIEF

Defendant raises additional issues in a pro se supplemental brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4. She argues that advisory counsel's conduct infringed on her constitutional right of self-representation, and that she was denied a fair trial because of both prosecutorial and judicial misconduct. We conclude that defendant is not entitled to a new trial on the basis of these issues.

## A. SELF-REPRESENTATION

To properly preserve an issue for appeal, a defendant must timely object in the trial court, even if the right asserted is constitutional in nature. *People v Carines*, 460 Mich 750, 752-753, 763-764; 597 NW2d 130 (1999). As defendant acknowledges, she did not argue below that standby advisory counsel interfered with or otherwise violated her constitutional right of self-representation. Therefore, this issue is unpreserved. We review unpreserved claims of constitutional error for plain error affecting substantial rights. *Id*. at 762-763.

During the proceedings, defendant was represented by different attorneys. Immediately leading up to trial, defendant was represented by Attorney John Holmes. On the first day of trial,

defendant elected to represent herself with the assistance of Holmes as standby advisory counsel. Defendant now complains that Holmes' conduct, acting as advisory counsel, derailed her ability to effectively represent herself, thereby violating her constitutional right of self-representation.

Defendant first complains that Holmes disrupted her defense by failing to subpoena defense witnesses Caronda Taylor, Michael Dorsey, Attorney Darryl Mitchell (one of defendant's former counsels), and Tandy. Generally, " 'standby counsel is not 'counsel' within the meaning of the Sixth Amendment.' " *People v Willing*, 267 Mich App 208, 228; 704 NW2d 472 (2005) (quotation omitted). Standby counsel "may offer advice, but . . . does not speak for the defendant or bear responsibility for [her] defense," *id.*, and the defendant must accept the consequences of representing [her]self, *People v Kevorkian*, 248 Mich App 373, 422; 639 NW2d 291 (2001). For the actions complained of here, however, Holmes was apparently still representing defendant and accepted responsibility to contact witnesses on defendant's behalf. Thus, for this particular issue, Holmes was counsel for defendant and, therefore, is held to the standards of trial counsel. The pertinent question is whether defendant can demonstrate that Holmes' representation was constitutionally deficient.

Because defendant failed to raise an ineffective assistance of counsel claim in the trial court in connection with a motion for a new trial or request for an evidentiary hearing, our review of this claim is limited to mistakes apparent on the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). "To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice." *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013) (citation omitted). "To demonstrate prejudice, a defendant must show the probability that, but for counsel's errors, the result of the proceedings would have been different." *Id.*

This claim is without merit. Although defendant asserts that Holmes should have subpoenaed the proposed witnesses because they would have "exonerated" her, she has not provided any witness affidavits, or identified any other evidence of record, establishing that these witnesses would have testified at trial and provided favorable testimony. Absent such a showing, defendant cannot establish that she was prejudiced by Holmes' failure to subpoena the proposed witnesses for trial.

Defendant next complains that advisory counsel acted "in concert" with the prosecutor in "disregard to her self-representation status" when he assisted in redacting the preliminary examination testimony of Richardson, who was deemed to be an unavailable witness under MRE 804. She further complains that advisory counsel gave her "scant procedural advice" on this matter. A defendant who represents herself "must be allowed to control the organization and content of [her] own defense, to make motions, to argue points of law, to participate in voir dire, to question witnesses, and to address the court and the jury at appropriate points in the trial." *McKaskle v Wiggins*, 465 US 168, 174; 104 S Ct 944; 79 L Ed 2d 122 (1984). Whether a defendant's right to self-representation has been violated depends "on whether the defendant had a fair chance to present [her] case in [her] own way." *Id.* at 177.

This issue is also without merit. It is apparent from the record that defendant's right of self-representation was respected. Advisory counsel oversaw a basic procedural matter—

redacting then codefendant Tandy's attorney's cross-examination of Richardson from the preliminary examination transcript. The United States Supreme Court has indicated that a defendant's rights are not violated when advisory counsel assists a pro se defendant with routine procedural or evidentiary issues. See *Wiggins*, 465 US at 183. Although defendant complains that advisory counsel's procedural advice regarding MRE 804 was "scant," the trial court explained the court rule to defendant on the record. Also, the trial court observed, and advisory counsel agreed, that defendant's position on the matter "needs to be from [defendant], because she's acting as her own attorney." Defendant then stated her position, which was that the introduction of Richardson's preliminary examination testimony was "beneficial to [her], so we'll go ahead" and that she had "[n]o objection" to the introduction of that testimony.

The record otherwise demonstrates that defendant was afforded her right of self-representation. Defendant gave an opening statement, cross-examined the prosecution's witnesses, made objections, argued her positions, and presented a closing argument. At times, advisory counsel assisted defendant by explaining certain rules, but he did not take over the case in any manner. Defendant clearly controlled the organization and content of her own defense.

In her last complaint, defendant asserts that advisory counsel was not "acting in her best interest" because he "issued piecemeal copies" of discovery to her rather than providing "her the entire discovery file." However, defendant has not indicated what discovery was withheld or delayed, or how the manner in which discovery was provided affected her defense. Thus, defendant has not supported her claim that advisory counsel engaged in conduct that derailed her defense and prevented her from effectively representing herself, thereby violating her constitutional rights. "An appellant may not merely announce [her] position and leave it to this Court to discover and rationalize the basis for [her] claims[.]" *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). Consequently, defendant has not demonstrated a plain error affecting her substantial rights, and accordingly, she is not entitled to appellate relief on this claim. *Carines*, 460 Mich at 762-763.

## B. PROSECUTOR'S CONDUCT

Defendant did not object to the prosecutor's conduct that she now challenges, leaving this claim unpreserved. We review unpreserved claims of prosecutor misconduct for plain error affecting substantial rights. *People v Roscoe*, 303 Mich App 633, 648; 846 NW2d 402 (2014). We will not reverse if the alleged prejudicial effect of the prosecutor's conduct could have been cured by a timely instruction. *People v Watson*, 245 Mich App 572, 586; 629 NW2d 411 (2001).

Defendant on appeal points out that Jackson and defendant never personally met, and based on this fact, argues that the prosecutor improperly referenced facts not in evidence when she made the following remark during closing argument:

> And third, that the defendant did this with the intent to defraud. Rosalyn [Jackson] testified that she had no interest in this, she had not given permission to the defendant to do this.
>
> *She had gone to her for pre-approval of $150,000 home loan* and all of a sudden she's—for clearly for months, based on the exhibits that the defendant

admitted, for months she's getting letters about—about accounts and things to that affect that she never gave permission to have opened and she never gave the defendant or even wanted the defendant to do that type of work for her. [Emphasis added.]

Although prosecutors may not argue facts not in evidence or mischaracterize the evidence presented, they are free to argue the evidence and all reasonable inferences that arise from the evidence in relation to their theory of the case. *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995); *Watson*, 245 Mich App at 588. Viewed in context, the prosecutor's use of the phrase "had gone to" was not intended to mislead the jury about whether Jackson had personally met with defendant. Rather, the prosecutor was in the midst of a narrative about the events that led to defendant coming into possession of Jackson's personal identifying information, on the basis of testimony that Jackson and Jackson's nephew, Dwight Miller, had provided. According to that testimony, Jackson was not able to meet with defendant on March 8, as planned, so, while on the phone with defendant at Jackson's house, Miller asked defendant what financial documents she needed to start the loan application process. In turn, Jackson gave Miller copies of all of the requested information, including her driver's license, bank statements, and tax returns, for Miller to deliver to defendant on Jackson's behalf, which he did on the evening of March 8. Two days later, on March 10, defendant called Jackson and informed her that she had been approved for $150,000 worth of loans. It is difficult to see how the prosecutor's use of the phrase "She had gone to her for pre-approval of," rather than, for example, "defendant had been contacted for pre-approval of," had any notable impact on defendant's convictions. The point was that Jackson and defendant had been connected for a business purpose that allowed defendant to receive and possess Jackson's personal identifying information, which the prosecutor argued defendant then used in a fraudulent manner. The prosecutor's commentary was not improper.

Nonetheless, to any extent that the comment could be construed as arguably improper, a timely objection to the challenged remark could have cured any perceived prejudice by obtaining an appropriate cautionary instruction. See *Watson*, 245 Mich App at 586. And even though defendant did not object, the trial court instructed the jury that the lawyers' statements and arguments are not evidence, that the jury was to decide the case based only on the properly admitted evidence, and that it was to follow the court's instructions. The court's instructions were sufficient to dispel any possible prejudice. *People v Long*, 246 Mich App 582, 588; 633 NW2d 843 (2001). Juries are presumed to follow their instructions. *People v Breidenbach*, 489 Mich 1, 13; 798 NW2d 738 (2011).

## C. JUDICIAL MISCONDUCT

In her last claim, defendant argues that the trial court pierced the veil of impartiality when, instead of simply sustaining the prosecutor's objection regarding defendant's improper impeachment of Jackson, the trial court "inject[ed] [her] opinion add[ing] that that there was no impeachment." "The question whether judicial misconduct denied defendant a fair trial is a question of constitutional law that this Court reviews de novo." *People v Stevens*, 498 Mich 162, 168; 869 NW2d 233 (2015). However, because defendant did not object to the challenged conduct in the trial court, this issue is unpreserved. *People v Sardy*, 216 Mich App 111, 117-118; 549 NW2d 23 (1996). Unpreserved issues are reviewed for plain error affecting substantial rights. *Carines*, 460 Mich at 763.

A defendant must overcome a heavy presumption of judicial impartiality when claiming judicial bias. *People v Jackson*, 292 Mich App 583, 598; 808 NW2d 541 (2011). In determining whether a trial judge's conduct deprives a defendant of a fair trial, this Court considers whether the "trial judge's conduct pierces the veil of judicial impartiality." *Stevens*, 498 Mich at 164, 170. "A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party." *Id*. at 171. This is a fact-specific inquiry, and this Court considers the "cumulative effect" of any errors. *Id*. at 171-172. A single instance of misconduct generally does not create an appearance that the trial judge is biased, unless the instance is "so egregious that it pierces the veil of impartiality." *Id*. at 171. In evaluating the totality of the circumstances, this Court should consider a "variety of factors," including

> the nature of the judicial conduct, the tone and demeanor of the trial judge, the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, the extent to which the judge's conduct was directed at one side more than the other, and the presence of any curative instructions. [*Id*. at 172.]

As noted, defendant takes exception to the trial court's comment that there was "no impeachment" when issuing its ruling regarding defendant's attempt to impeach Jackson with her preliminary examination testimony. Defendant argues that the trial court's remark bolstered Jackson's credibility. One form of judicial misconduct is biased commentary in front of the jury. *Stevens*, 498 Mich at 173. Reversal is proper " 'when the trial judge's . . . comments were such as to place his great influence on one side or the other in relation to issues which our law leaves to jury verdict.' " *Id*. at 177 (citation omitted). In general, however, a trial judge's comment that is critical of or hostile to a party or his counsel is not sufficient to pierce the veil of judicial impartiality. *Jackson*, 292 Mich App at 598. A trial judge's rulings or opinions do not pierce the veil of judicial impartiality " 'unless there is a deep-seated favoritism or antagonism such that the exercise of fair judgment is impossible.' " *Id*. (citation omitted).

Considering the totality of the circumstances, the trial court's comments that "[t]here was no impeachment" and "[y]ou need to move on" were not calculated to cause the jury to believe that the court had any opinion regarding the case, and the comments were not likely to unduly influence the jury to the detriment of defendant. The comments do not reveal deep-seated favoritism or antagonism such that the trial court could not conduct the proceedings impartially. Rather, the court's comments were made in the context of addressing defendant's attempt to offer impeachment evidence and it appears that the trial court was merely explaining its ruling and not intending to bolster Jackson's credibility. The court appropriately exercised its discretion to control the trial to prevent the improper impeachment of a witness and to move the trial along after giving defendant ample opportunity to impeach the witness. It is well established that the trial court has a duty to control trial proceedings in the courtroom, and has wide discretion and power in fulfilling that duty. *People v Conley*, 270 Mich App 301, 307; 715 NW2d 377 (2006). Defendant has not shown that the trial court's conduct was improper.

Further, the trial court explained to the jury that it had a responsibility to ensure that the trial was run efficiently and fairly. The trial court instructed the jury that the case must be

decided on only the evidence, that its comments and rulings are not evidence, that it is not trying to influence the vote or express a personal opinion about the case when it makes a comment or a ruling, and that if the jury believes that the court has an opinion, that opinion must be disregarded. "Because [i]t is well established that jurors are presumed to follow their instructions, the presence of a curative instruction does tend to cut against a finding of judicial bias." *Stevens*, 498 Mich at 190 (quotation marks and citation omitted; alteration in *Stevens*). Accordingly, even if the trial court's comments could be deemed improper, the court's instructions cured any error. *Id*.

Affirmed in part and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Patrick M. Meter
/s/ Colleen A. O'Brien
/s/ Brock A. Swartzle